# IN THE SUPREME COURT, STATE OF WYOMING

# 2016 WY 52

APRIL TERM, A.D. 2016

*May 19, 2016*

JEFFERY ALLEN LAFFERTY,

**Appellant**
**(Defendant),**

**v.**

S-15-0169

**THE STATE OF WYOMING,**

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
Diane E. Courselle, Faculty Director, and Alan Davis, Student Intern, of the University of Wyoming Defender Aid Program, Laramie, Wyoming.  Argument by Mr. Davis.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Caitlin F. Young, Assistant Attorney General.  Argument by Ms. Young.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]   Appellant Jeffery Allen Lafferty was incarcerated awaiting trial for 811 days before pleading guilty to two counts of taking indecent liberties with his minor stepdaughter.  Mr. Lafferty argues on appeal that his constitutional right to a speedy trial was violated.  We affirm.

## ISSUE

[¶2]   Was Mr. Lafferty denied his constitutional right to a speedy trial?

## FACTS

### The Case Initially Filed – Docket No. 31-585

[¶3]   The saga began on November 2, 2012, when the State charged Mr. Lafferty with one count of first-degree sexual abuse of a minor and arrested him.  The Information alleged that Mr. Lafferty, the minor T.L.'s guardian, inflicted sexual intrusion on her by digital penetration of her vagina sometime between January 1, 2010 and June 30, 2010.

[¶4]   Mr. Lafferty's preliminary hearing in circuit court was set for November 9, 2012.  He appeared before the court that day, but the hearing did not take place, apparently because he did not yet have an attorney.  It was continued to November 16.  By that time, Mr. Lafferty had been appointed counsel and elected to waive a speedy preliminary hearing.  The preliminary hearing was then continued to November 30, 2012, then to January 18, 2013, and then again to February 8, 2013.  On February 4, Mr. Lafferty waived his right to the preliminary hearing entirely.  After ninety-six days from his arrest, the case was bound over to the district court.

[¶5]   Arraignment was held on February 21, 2013.  Mr. Lafferty pled not guilty, and the district court set a trial date of June 3, 2013.

[¶6]   A month later, on March 18, 2013, Mr. Lafferty filed a demand for a speedy trial as guaranteed by the Sixth Amendment of the United States Constitution, Wyoming Constitution Art. 1 § 10, and Wyoming Rule of Criminal Procedure 48.  Following a May 2013 scheduling conference, the district court was told that a plea agreement was on the horizon, so it set the case for a change of plea hearing on June 13, 2013, and it also vacated the trial date.  At the hearing on June 13, Mr. Lafferty decided not to change his plea because he wanted more time to think about the plea agreement he had been offered.

[¶7]   Accordingly, trial was again reset for July 8, 2013, and a tentative change of plea hearing was scheduled for June 19, 2013.  June 19 passed without Mr. Lafferty changing his plea.  The next day, June 20, another scheduling conference was held, and Mr.

1

Lafferty's trial was left on the July 8 criminal stack. Throughout the next few weeks, counsel and the judge kept in contact about whether the case would be tried or pled out, and for reasons that are not clear in the record, trial did not take place on July 8.

[¶8] Then, on July 31, 2013, the State moved to dismiss the case without prejudice pursuant to W.R.Cr.P. 48(a) because victim T.L. had disclosed information supporting additional charges, and another victim had come forward. The State filed additional charges in a different docket. The district court granted the motion to dismiss the same day.

***The Second Case with New Charges – Docket No. 31-757***

[¶9] Prior to dismissing the charge in Docket No. 31-585, the State filed an Information charging Mr. Lafferty with eight counts arising from various sexual acts with another minor victim, his stepdaughter L.W., in Docket No. 31-757 on June 28, 2013. Later realizing an error had been made in the Information, on July 2, 2013 the State amended it to change the identity of the minor victim in count eight from L.W. to T.L. The eight counts set forth in the amended information were:

- Count I: Third degree sexual abuse of a minor, L.W., who was less than fourteen years old at the time, by fondling her breasts in June of 1998;

- Count II: Third degree sexual abuse of L.W. This count alleged that Mr. Lafferty inflicted sexual contact on the victim by rubbing her vaginal area in June of 1998;

- Count III: Immoral or indecent liberties with L.W., by exposing her to pornography in January of 1991;

- Count IV: Third degree sexual abuse of L.W. by fondling her breasts in January of 1991;

- Count V: Third degree sexual abuse of L.W by rubbing her vaginal area in January of 1991;

- Count VI: Third degree sexual abuse of L.W. by touching her vaginal area in February of 1996;

- Count VII: Incest as to L.W. This count alleged that Mr. Lafferty engaged in sexual intercourse with his stepdaughter in May of 2002;

- Count VIII: First degree sexual abuse of a minor, T.L., by engaging in sexual intercourse with her on December 7, 2011, while he was her guardian.

We note that the charge concerning T.L. in Count VIII is different than the charge in the first case, Docket No. 31-585, which was dismissed about the time the Information just described was filed.

[¶10] On July 1, 2013, Mr. Lafferty was served with a warrant for his arrest on the above eight charges while still in jail on Docket No. 31-585. As a result, he remained in jail continuously after the State dismissed the first case.

[¶11] The circuit court held a preliminary hearing on the new Information on July 11, 2013, and Mr. Lafferty was bound over for trial on all charges. He filed a demand for speedy trial in the district court on July 30, 2013. He was arraigned on August 1, 2013, and pled not guilty to all counts. Trial was set for October 21, 2013.

[¶12] There was supposed to be a scheduling conference on September 26, 2013, but defense counsel moved twice to vacate and reset it because of conflicts with his schedule. The district court granted the requests, resetting the conference to October 17, 2013. The trial date was subsequently vacated and reset to November 4, 2013.

### The Third Case – The Original Charge Refiled – Docket No. 31-819

[¶13] On September 4, 2013, the State refiled the charge that had been dismissed in Docket No. 31-585; that is, the charge alleging that Mr. Lafferty inflicted first degree sexual abuse upon T.L. in 2010. The circuit court held a preliminary hearing on this charge on September 16, 2013, and the case was bound over to the district court for trial. Mr. Lafferty then filed a demand for speedy trial on September 23, 2013. On October 4, 2013, the district court arraigned him on the refiled charge in Docket No. 31-819, and he pled not guilty.

[¶14] At the arraignment, the district court expressed its intention to set the trial for January 13, 2014, but defense counsel requested that it instead be set in early February. Mr. Lafferty voiced concern about his counsel's proposal, and referred to his speedy trial rights. The State echoed Mr. Lafferty's concerns and also requested that the trial be held in January. Defense counsel explained that he could not be present for trial in January, and that therefore new defense counsel would need to take over if trial took place then. Based upon what it heard from all parties, the district court set Mr. Lafferty's case for trial on February 3, 2014. As explained below, that trial date would also be vacated.

### Joinder of Docket Nos. 31-757 and 31-819 and the Rest of the Story

[¶15] On October 24, 2013, the State moved to join Docket Nos. 31-757 and 31-819, asserting that the charges in each could have been filed in a single information. The district court agreed and granted the motion to join the cases on October 28, 2013.

3

[¶16]   On November 5, 2013, the court vacated and reset both dockets so they would be tried together on December 2, 2013.  On November 21, 2013, the court held a scheduling conference, during which Mr. Lafferty's new public defender (his second attorney) indicated that he would enter into a plea agreement and change his plea.  Defense counsel also suggested that his client would be willing to waive a speedy trial.[1]  Accordingly, the court set a change of plea hearing for December 5, 2013 and vacated the December 2 trial setting.

[¶17]   A day before the change of plea hearing, on December 4, 2013, Mr. Lafferty filed a motion to vacate and reset it.  The motion was granted, and the district court reset the hearing for December 19, 2014.  At the change of plea hearing ultimately held on that date, Mr. Lafferty changed his mind again and did not plead guilty.

[¶18]   Because Mr. Lafferty had not changed his plea at the December 19 hearing, the district court provided him an expedited trial setting for January 9, 2014.  However, defense counsel told the district court that he and Mr. Lafferty were worried about whether they could be ready for trial by then, and he requested yet another continuance.[2]  The State expressed concern about continuing to push the trial back because Mr. Lafferty's 180-day speedy trial deadline under W.R.Cr.P. 48(b) was fast approaching.

[¶19]   The district court denied the request for a continuance, explaining that it too was concerned about the right to a speedy trial.  It also noted that it had vacated a civil trial to open up the January 9, 2014 trial date for Mr. Lafferty's case in order to protect that right.

[¶20]   The very next day, December 20, 2013, Mr. Lafferty's counsel filed a motion for a psychological examination to determine his competency and fitness to stand trial.  The district court granted the motion, suspended proceedings, and gave the Wyoming State Hospital thirty days (until January 20, 2014) to complete the evaluation.  In the court's words, it "had no choice but to vacate the January 9, 2014 trial date."

[¶21]   On January 17, 2014, the Wyoming State Hospital requested a sixty-day extension to complete its evaluation due to a personal tragedy experienced by one of its evaluators, and the resulting need to reassign cases.  A few days later, on January 22, 2014, the district court granted the request and extended the deadline to March 20, 2014.

[¶22]   About a month later, on February 19, 2014, the State Hospital sent a letter to the judge indicating that the examiner assigned to his case attempted to interview Mr. Lafferty on two separate occasions, but those attempts were thwarted because he refused

---

[1] As we will see, Mr. Lafferty did not waive his speedy trial rights.
[2] Even Mr. Lafferty himself attempted to argue for a continuance by speaking up during the hearing.  He cited his change in counsel and explained that he sought more time for he and his new attorney to catch up and prepare for trial.

to participate.[3]  He was reported to have told the evaluator that he was "clearly competent" and that it was not his choice or decision to pursue an evaluation.

[¶23]  The district court held a status conference to discuss this development on March 3, 2014.  It noted that it had also received a letter from Mr. Lafferty indicating that he wanted to terminate his current counsel.  Regarding the counsel issue, counsel at the time and the district court explained to him that he was not entitled to choose his public defender.[4]  He thus had three options: continue with his current public defender, hire private counsel, or represent himself.  Mr. Lafferty wisely acknowledged that he was not capable of representing himself, and the same attorney continued to represent him for the time being.

[¶24]  As to the question of competency and fitness to stand trial, the court confronted a difficult issue it had not encountered before.  Faced with defense counsel's concern that Mr. Lafferty might not be fit to stand trial on the one hand, and his own statement that he was "clearly competent," coupled with his lack of cooperation on the other, the district court did the best it could.  It engaged in a dialogue with him about his competency and fitness, asking various questions about his ability to understand the legal proceedings against him.  Mr. Lafferty was articulate and seemed fit to proceed in the court's view.[5]

[¶25]  Faced with Mr. Lafferty's unwillingness to cooperate with an evaluation by a mental health professional and armed with some assurance that he understood the legal process, the court decided to set the case for trial at the next available opportunity.  Given its congested docket, that would not be until July 8, 2014.

[¶26]  On March 4, 2014, the district court issued an order finding good cause for continuing the case and setting a trial date beyond the 180 days of arraignment pursuant to W.R.Cr.P. 48(b)(4)(B)(iii).  The court made findings setting out a myriad of reasons to extend the date, including delays caused by concerns about Mr. Lafferty's competency and fitness and his lack of cooperation, the change in public defenders, and the repeated requests for change of plea hearings that caused trial dates to be reset without yielding a guilty plea.  The order also reflected the judge's frustration with the wasted accommodations it had extended in an effort to provide a speedy trial.[6]

---

[3] Although the court's order had directed that this evaluation take place at the Wyoming State Hospital in Evanston, the State Hospital attempted to conduct it at the Laramie County Detention Center in Cheyenne.

[4] Mr. Lafferty was represented throughout the case by a number of very experienced defense counsel from the public defender's office.

[5] Although this approach was borne of necessity and unusual, as we will explain below, the court's conclusion was later shown to be correct by not only one, but two separate evaluations, for whatever that is worth.

[6] The order was detailed and thorough, and the meticulous examination of events that forced the court into the position in which it found itself was very helpful for appellate review.

[¶27] On June 11, 2014, roughly three months later and a month before the new trial date, Mr. Lafferty's counsel filed a motion to dismiss the charges against him because he had been denied a speedy trial under the United States and Wyoming constitutions. By that point, he had changed counsel for a third time and now had two newly appointed but experienced public defenders representing him. A hearing was held on June 26, 2014, but at the start of it, one of the new defense counsel raised her own concerns about Mr. Lafferty's competency and fitness to proceed to trial, and asked that the proceedings be suspended for another evaluation.

[¶28] The court was understandably unenthusiastic about further delay, but as it had to ensure that Mr. Lafferty was fit to proceed, it agreed to suspend the proceedings as requested. In doing so, it noted that it was very concerned about the growing speedy trial issue, and pointed out that the delays to that point in time were not the State's fault. The Wyoming State Hospital was given thirty days to complete the evaluation. That deadline was evidently extended another thirty days at that facility's request.[7] The order for this examination made it clear that the evaluation was to take place at the State Hospital facility in Evanston, rather than at the Laramie County Detention Center.

[¶29] The evaluation was received on September 19, 2014, and it indicated that Mr. Lafferty was fit to proceed. The court held a status conference on September 22, 2014, during which it discussed the evaluation with both parties. Defense counsel responded by asking for a second evaluation to be conducted by a private practitioner not affiliated with the State Hospital.

[¶30] Mr. Lafferty initially opposed his counsel's request, but he asked the court to give him a week to ponder whether he needed to be evaluated again with his attorneys. The court again made it clear that it was very cognizant of Mr. Lafferty's right to a speedy trial and once again noted that the "delay[s] that have been occasioned so far in this case have been largely the result of the defense . . . ." Nevertheless, it obliged Mr. Lafferty and gave him a week to sort things out with his lawyers.

[¶31] After the week of reflection had passed, the court held a hearing to determine whether to order another evaluation on September 29, 2014. Mr. Lafferty's counsel explained that she still felt the additional examination was warranted, although Mr. Lafferty did not agree. The district court granted defense counsel's motion and ordered the second evaluation to be completed within thirty days.

---

[7] In oral argument, counsel for the State advised the Court that the clerk of the district court would not allow attorneys from the Attorney General's office to inspect this evaluation. The State suggested in its brief that the thirty-day extension was the result of lack of cooperation on Mr. Lafferty's part. This does not appear to be accurate, as the report (which is part of the record before us) indicates that after receiving explanations of the process, "he was ultimately cooperative and compliant."

6

[¶32]   The State requested that trial take place as soon as possible should Mr. Lafferty be found competent, with due consideration of the State's need to arrange for attendance of out-of-state witnesses.   On October 24, 2014, defense counsel requested a thirty-day extension to complete the evaluation, which was granted.

[¶33]   The private practitioner's evaluation also found Mr. Lafferty competent and fit to proceed. The district court held a status conference on December 8, 2014, at which it learned that the defense would not contest the results of the evaluation.   The Court offered alternative trial dates in January or February.   The State requested the February date, as there was an out-of-state witness, alleged victim T.L., who needed to attend, and the process to compel attendance of a witness who does not reside in Wyoming takes time.   The trial was therefore set for February 3, 2015, to which there was no objection from the defense.

[¶34]   On January 16, 2015, the district court held a hearing on various issues, including Mr. Lafferty's motion to dismiss for lack of speedy trial.   It orally denied the motion, reasoning that the delays bringing the case to trial were caused by Mr. Lafferty and his counsel.   A decision letter and written order discussed in detail below would follow.

[¶35]   On January 23, 2015, Mr. Lafferty signed a conditional stipulated plea agreement under Wyoming Rule of Criminal Procedure 11(e)(1)(C).   He agreed to plead guilty to Counts IV and V of a fourth amended Information.[8]   Those counts charged the following:

- Count IV:  Immoral or indecent liberties with a minor, L.W., based upon a claim that Mr. Lafferty rubbed L.W.'s breasts with his hand sometime between June 1, 2000 and September 1, 2000, in violation of Wyo. Stat. Ann. § 14-3-105(a);

- Count V:  Immoral or indecent liberties with a minor, L.W., based upon a claim that Mr. Lafferty rubbed L.W.'s vaginal area sometime between June 1, 2000 and September 1, 2000, in violation of Wyo. Stat. Ann. § 14-3-105(a).

[¶36]   In exchange for the plea of guilty as to Counts IV and V, the State agreed to dismiss the remaining counts in Docket No. 31-757 and the single count in Docket No. 31-819 with prejudice.   The parties stipulated that if the court accepted the plea agreement, Mr. Lafferty would receive a sentence of seven to ten years in prison on Count IV, and a consecutive sentence of seven to ten years to be suspended in favor of ten years supervised probation on Count V.[9]   Additionally, as noted, the plea was conditional, allowing Mr. Lafferty the right, *inter alia*, to appeal the district court ruling

---

[8] A second and third amended Information were filed during the case, and then a fourth amended Information was ultimately filed.  Neither the victims nor the counts changed significantly.
[9] Under W.R.Cr.P. 11(e)(4), Mr. Lafferty would have been allowed to withdraw his plea if the district court had not sentenced him in accordance with the agreement.

that his constitutional right to speedy trial had not been violated. Mr. Lafferty pled guilty and was sentenced in accordance with the plea agreement.

[¶37] Before sentencing, the district court issued a comprehensive twenty-nine page decision letter and a supporting order confirming its earlier denial of Mr. Lafferty's motion to dismiss for a speedy trial violation. The district court considered the four factors established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct 2182, 2192, 33 L.Ed.2d 101 (1972), which this Court long ago adopted.

[¶38] As to the first factor, length of the delay, the district court found that Mr. Lafferty had been incarcerated for 811 days from the time of his arrest on the charge in Docket No. 31-585 to the date he entered his guilty plea. It determined that amount of time was presumptively prejudicial and warranted analysis of the other *Barker* factors.

[¶39] Regarding reasons for the delay, the second factor of the test, it determined that "[n]o delay weighs heavily against the State, because no bad faith or abusive tactics have been employed in this case," and also noted the congested state of the court's docket and the normal time required to complete such proceedings. It also found that Mr. Lafferty's responsibility for the delays was considerable because of his actions relating to the competency evaluations, multiple requests for continuances, changes of counsel and two requests to vacate trial dates for a change of plea he did not ultimately make. It therefore weighed this factor heavily against him.

[¶40] The court then turned its attention to the third factor, Mr. Lafferty's assertion of his right to a speedy trial. He asserted his right three times, but the court found that the vigorousness of his assertions was diluted by the delays he caused. Nonetheless, it decided that he "did enough for this factor to slightly weigh in his favor."

[¶41] Finally, as to the fourth factor that focuses on the prejudice suffered, the court carefully considered the particular evils that the right to speedy trial is intended to prevent. It ultimately concluded that "[c]onsidering the lengthy pretrial incarceration, pretrial anxiety, and impairment of defense, the court finds that [Mr. Lafferty] did not meet his burden to show prejudice from the delay," and thus the factor weighed heavily against him.

[¶42] After balancing the required factors, the district court concluded that the delay in bringing Mr. Lafferty to trial was reasonable and did not impair his right to a fair trial. After sentencing, he timely perfected this appeal.

8

## STANDARD OF REVIEW

[¶43] We review Mr. Lafferty's speedy trial claim *de novo* to ensure that right guaranteed by the United States Constitution has not been violated.[10] *Rhodes v. State*, 2015 WY 60, ¶ 9, 348 P.3d 404, 407 (Wyo. 2015).

## DISCUSSION

[¶44] A criminal defendant's right to a speedy trial is guaranteed under the Sixth Amendment to the United States Constitution. *Rhodes*, ¶ 17, 348 P.3d at 410; *Ortiz v. State*, 2014 WY 60, ¶ 39, 326 P.3d 883, 893 (Wyo. 2014). A constitutional speedy trial analysis requires consideration of four factors: (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192; *Rhodes*, ¶ 17, 348 P.3d at 410. No factor is dispositive and they all must be "considered together and balanced in relation to all of the relevant circumstances of the delay in bringing the defendant to trial." *Humphrey v. State*, 2008 WY 67, ¶ 20, 185 P.3d 1236, 1243 (Wyo. 2008) (quoting *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193). Ultimately, the "inquiry is whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial." *Rhodes*, ¶ 17, 348 P.3d at 411 (quoting *Warner v. State*, 2001 WY 67, ¶ 10, 28 P.3d 21, 26 (Wyo. 2001)).

### *Length of Delay*

[¶45] In calculating the delay under a constitutional analysis, the "speedy trial clock begins to run at the time of arrest, information, or indictment, whichever occurs first." *Ortiz*, ¶ 40, 326 P.3d at 893. When the charges are dismissed and then subsequently re-filed, the constitutional speedy trial clock is not reset. *Id.*; *Rhodes*, ¶ 17, 348 P.3d at 411. Rather, only "the interim period between dismissal of charges and re-filing is not counted as long as the defendant is neither under arrest nor formally charged." *Ortiz*, ¶ 40, 326 P.3d at 893. "We have also recognized that when a dismissed charge is supplanted by another charge, the periods of formal charge by a single sovereign for the same criminal act are tacked together even if the charges are different." *Humphrey*, ¶ 21, 185 P.3d at 1244 (internal quotation marks omitted); *see also Rhodes*, ¶ 17, 348 P.3d at 411.

[¶46] Based upon these principles, the speedy trial clock started to tick on November 2, 2012, the date when the original information was filed and Mr. Lafferty was arrested. He pled guilty under his plea agreement on January 23, 2015. 811 days elapsed between the filing of the original information and arrest and the date of the guilty plea. As the district court found, this delay is presumptively prejudicial and requires further analysis of the

---

[10] Although Mr. Lafferty mentioned his right to speedy trial under the Wyoming Constitution in his district court pleadings, he did not pursue an independent state constitutional claim in this appeal.

other *Barker* factors. *See Castellanos v. State*, 2016 WY 11, ¶ 71, 366 P.3d 1279, 1299 (Wyo. 2016); *see also Ortiz*, ¶ 41, 326 P.3d at 893.

***Reason for the Delay***

[¶47]  Turning to the second factor of the *Barker* analysis, we must determine who or what was responsible for the delay.  *Ortiz*, ¶ 42, 326 P.3d at 893.  We have explained:

> Delays attributable to the defendant may disentitle him to speedy trial safeguards. Delays attributable to changes in defense counsel, to the defendant's requests for continuances, and to the defendant's pretrial motions are all considered delays attributable to the defense. With respect to the prosecution, a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.

*Id.* (internal citations and quotation marks omitted); *see also Castellanos*, ¶¶ 73-74, 366 P.3d at 1300.

[¶48]  A review of the record reveals that much of the delay was the result of Mr. Lafferty's own actions, which in the aggregate caused his case to go on the circuitous journey it did.  From the record, we glean an effort to work the system to cause multiple and lengthy delays, and then to claim a constitutional violation.

[¶49]  As detailed above, a sizeable chunk of the delay was caused by Mr. Lafferty twice changing his mind at change of plea hearings, after two trial dates had been vacated. Several motions for continuance compounded the delay.

[¶50]  Another large portion of the delay was caused by Mr. Lafferty's conduct in the first competency evaluation.  Suspiciously, the day after he requested and was denied a continuance of an approaching firm trial date, he filed a motion for a physiological examination to determine whether he was fit to proceed to trial.  This tack caused substantial delay of precisely the kind Mr. Lafferty and his counsel had sought through the denied motion for continuance.  The district court had no choice but to grant the motion and suspend proceedings.

[¶51]  Mr. Lafferty refused to participate in the evaluation that had been requested despite two attempts by the evaluator to complete it, protesting that he was clearly competent and fit to proceed.  This put the district court in the awkward position of having to assure itself as best it could that he was in fact fit and competent as he claimed, and not as his attorneys feared.  The net result was that a significant amount of time was

10

needlessly spent addressing the matter, all of which was necessitated by his conduct. *See Potter v. State*, 2007 WY 83, ¶ 37, 158 P.3d 656, 665 (Wyo. 2007).

[¶52] Regarding the State's role in the delay, there are only a few apparent delays attributable to it: (1) the dismissal and refiling of the initial charge, and (2) the district court's congested court docket at times that necessitated certain proceedings to occur in a somewhat protracted fashion. The State also requested a February 2015 trial date, rather than agreeing to try the case in January, so it could secure the attendance of an important out-of-state witness. These delays hardly qualify as "deliberate attempts to delay the trial in order to hamper the defense." *Ortiz*, ¶ 51, 326 P.3d at 895.

[¶53] We have explained that "[a] more neutral reason such as . . . overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Potter*, ¶ 36, 158 P.3d at 665; *see also Castellanos*, ¶ 81, 366 P.3d at 1302. As the district court stressed, the State at no time moved to continue proceedings; instead, the prosecutors repeatedly voiced concern about Mr. Lafferty's right to a speedy trial while he delayed the process.

[¶54] The district court summarized the delays as follows:

- No delay weighs heavily against the State, because no bad faith or abusive tactics have been employed in this case;
- Ninety two (92) days weigh slightly against the State, due to court administration and the potentially erroneous competency evaluation;
- Four hundred fifty seven (457) days are neutral for various reasons;
- One hundred forty (140) days weigh slightly against [Mr. Lafferty], due to [his] actions during competency exams, requested continuances, and the requested private competency examination; and
- One hundred thirty three (133) days weigh against [Mr. Lafferty] heavily, because [he] vacated two trial dates for unsuccessful change of pleas and requested multiple continuances.

Although many issues contributed to the delay in this trial, it is apparent from the record that [Mr. Lafferty's] own dilatory practices have substantially delayed his own speedy trial. This factor weighs heavily in favor of the State.

11

[¶55]  The district court is correct that the second *Barker* factor weighs heavily in favor of the State and against Mr. Lafferty.

### *Assertion of Right to Speedy Trial*

[¶56]  Turning to the third factor, we must consider Mr. Lafferty's assertion of his right to a speedy trial.  *Ortiz*, ¶ 52, 326 P.3d at 895.  "Although a defendant is not required to assert his right to a speedy trial, his assertion or failure to assert is a factor for consideration in evaluating a speedy trial claim."  *Durkee v. State*, 2015 WY 123, ¶ 34, 357 P.3d 1106, 1115 (Wyo. 2015).  "We also consider the vigor with which the defendant claimed his right to a speedy trial in determining the reasonableness of any delay."  *Id.*

[¶57]  There is no dispute that Mr. Lafferty asserted his right to a speedy trial in each of the three cases, on March 18, 2013, July 30, 2013, and September 23, 2013.  The question then becomes whether the vigorousness of his assertions is weakened by his own actions that caused substantial delays in this case.  *See Berry v. State*, 2004 WY 81, ¶ 45, 93 P.3d 222, 236 (Wyo. 2004).  This Court has explained:

> However, we can, and do, consider whether the right was asserted, and how vigorously, in determining the reasonableness of any delay. The action or inaction of the defendant in this regard is a reflection of the actual amount of prejudice being experienced.

*Wehr v. State*, 841 P.2d 104, 113 (Wyo. 1992) (citations omitted); *see Campbell v. State*, 999 P.2d 649, 656 (Wyo. 2000) ("Because less than vigorous assertions of the right to a speedy trial are given little weight, this factor, too, weighs against a speedy trial claim.").

[¶58]  While the fact that he asserted his right weighs in Mr. Lafferty's favor, it does so only slightly because of the conduct that caused substantial delays.  Indeed, his contention is puzzling in light of the reality that while seeking a speedy trial, he and his counsel were also cajoling the district court to grant continuances even though the court repeatedly expressed its concerns for his speedy trial rights, and made every effort to bring the case to trial as soon as it could.

[¶59]  The district court correctly concluded that while Mr. Lafferty asserted his right to a speedy trial, his "delays whittled away at the vigorousness of his assertion."

### *Prejudice*

[¶60]  The fourth and final factor requires this Court to examine whether the delay we have discussed prejudiced Mr. Lafferty.  A defendant does not have to establish prejudice to succeed with a speedy trial argument.  *Harvey v. State*, 774 P.2d 87, 96 (Wyo. 1989)

(citing *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct 188, 189, 38 L.Ed.2d 183 (1973)). Nonetheless, prejudice or the lack thereof should be considered when applying the *Barker* test. *Harvey*, 774 P.2d at 96.

[¶61]  "To evaluate prejudice for a speedy trial analysis, we consider, (1) lengthy pretrial incarceration; (2) pretrial anxiety; and, (3) impairment of the defense." *Ortiz*, ¶ 59, 326 P.3d at 896 (internal quotation marks omitted).  Pretrial anxiety is the factor of least significance because there will always be a certain amount of pretrial anxiety in a criminal case, and thus Mr. Lafferty must demonstrate more that he suffered extraordinary or unusual pretrial anxiety. *See Castellanos*, ¶ 88, 366 P.3d at 1303.  The last consideration, impairment of defense, is the most significant because it affects the ability of a defendant to prepare his defense and may result in an uneven playing field. *See id; see also Durkee* ¶ 37, 357 P.3d at 1116; *Ortiz*, ¶ 62, 326 P.3d at 896.

[¶62]  Because Mr. Lafferty is responsible for most of the delay, he must demonstrate actual prejudice. *See Ortiz,* ¶¶ 59-65, 326 P.3d at 896 (requiring defendant to prove prejudice, even with a delay of 887 days); *see also Castellanos*, ¶ 88, 366 P.3d at 1303 (burden remained with defendant, even though delay totaled 927 days); *Humphrey*, ¶ 29, 185 P.3d at 1246 ("We have held that until delay exceeds a point where there is a probability of substantial prejudice, the burden of proving prejudice should remain with the accused." (internal quotation marks omitted)).

[¶63]  Mr. Lafferty has shown that he suffered lengthy pretrial incarceration, as 811 days is indeed extensive.  As to the second sub-factor, however, we have said that "because a certain amount of pretrial anxiety naturally exists, a defendant must demonstrate he suffered prejudice in an extraordinary or unusual manner." *Ortiz*, ¶ 61, 326 P.3d at 896 (internal citations and quotation marks omitted).  Mr. Lafferty has not demonstrated extraordinary or unusual pretrial anxiety and prejudice.  His assertions of the same are unsupported by the record, and such bare assertions will not suffice. *Id.*  We agree with the district court's conclusion:

> Here, the court has before it alleged anxiety with no actual proof.  At the January 16, 2015, hearing, [Mr. Lafferty] argued that he has lost his home, financial resources, association, and potential competency.  The court has no evidence before it suggesting such.  The court is sympathetic to [Mr. Lafferty's] lengthy incarceration, but [he] has the burden of proof in this *Barker* factor.  [Mr. Lafferty] did not meet his burden of proof on this consideration

[¶64]  Turning to the third and most important consideration under this factor, "[o]ur inquiry for this prong of the prejudice analysis is whether the delay resulted in a loss of evidence or impaired the defense by the death, disappearance, or memory loss of

witnesses for the defense." *Castellanos*, ¶ 90, 366 P.3d at 1303 (internal quotation marks omitted).

[¶65] Mr. Lafferty first contends that the delay allowed the State to amend the charges, and therefore preparation of a defense was a continuously moving target. That theory fails because the allegations and victims remained the same throughout the proceedings. He also asserts, without specific support, that he could not locate several witnesses who might have been favorable to him. From the record, it appears that the main witness implicated by this argument was T.L., one of the victims who by then lived out of state, whom the State necessarily planned to bring to trial.

[¶66] Even assuming that Mr. Lafferty's attorneys actually sought to contact T.L., and that she would have been willing to speak with them or give them a statement of some kind, there is no guarantee that T.L would have provided any information which would have been helpful to his defense. Furthermore, Mr. Lafferty would have obtained exculpatory evidence T.L. provided to the State, because it was required to turn any such evidence over to him. *See, e.g., Davis v. State*, 2002 WY 88, ¶ 14, 47 P.3d 981, 985 (Wyo. 2002) (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963)). The unsupported allegations made do not show that any evidence was lost, had grown stale, or could no longer be tested, and we have been provided no meaningful explanation as to how any of this could have impaired the defense.

[¶67] Considering the three prejudice prongs—(1) lengthy pretrial incarceration, (2) pretrial anxiety, and (3) impairment of the defense—we find that Mr. Lafferty failed to meet his burden to establish prejudice from the delay. The fourth and final *Barker* factor, therefore, weighs heavily against Mr. Lafferty.

### *Balancing of the Factors*

[¶68] The State did not directly contribute to any significant delay in this case. It even objected to some of Mr. Lafferty's requests that ended up causing substantial holdups. The only delays we can assign to the State are those caused by dismissing and refiling the first charge, those associated with court administration issues, and the unchallenged choice of a February rather than a January 2015 trial date. Such delays are not heavily weighted against the State, as they cannot qualify as deliberate attempts to delay the trial in order to hamper the defense.

[¶69] The bulk of the delay that can be heavily weighted must be placed on Mr. Lafferty's side of the scale. After balancing the *Barker* factors as this Court is required to do, we can only conclude that there was no violation of Mr. Lafferty's constitutional right to a speedy trial.

[¶70] Affirmed.