2017 WY 108

**Clint Raymond WEBB, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

S-16-0081

Supreme Court of Wyoming.

September 15, 2017

Representing Appellant: Office of the Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel. Argument by Ms. Olson.

Representing Appellee: Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Joshua C. Eames, Assistant Attorney General. Argument by Mr. Eames.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

KAUTZ, Justice.

[¶1] A jury convicted Appellant, Clint Raymond Webb, of two counts of aggravated assault and battery with a deadly weapon, one count of felony property destruction, and one count of attempted second degree murder. On appeal, Mr. Webb argues his convictions should be reversed because the State did not bring his case to trial in a speedy manner, two of his convictions violated the Fifth Amendment to the United States Constitution, and there were various errors that occurred during his trial. We affirm.

## ISSUES

[¶2] Mr. Webb raises six issues in this appeal:

I. Was [Wyoming Rule of Criminal Procedure] 48 violated when [Mr. Webb] was prosecuted for the same charges after dismissal, when [he] had filed a demand for speedy trial?

II. Was [Mr. Webb] denied his constitutional right to a speedy trial?

III. Did the prosecutor commit misconduct in closing argument when he mischaracterized the role of the defense expert witness, Dr. Loftus?

IV. Was trial counsel ineffective for failing to offer an accident instruction?

V. Did plain error occur[ ] when the trial court gave an inference of malice instruction?

VI. Should this Court reconsider its holding in *Jones v. State*, 2016 WY 110, [384 P.3d 260] (Wyo. 2016) as this Court did not analyze the legislative history of Wyo. Stat. Ann. §§ 6-2-502(a)(ii) and 6-2-104 and determine that the legislature expressly intended the result reached in *Jones*?

## FACTS

[¶3] On June 30, 2014, Julie Webb was driving her Nissan Murano in Casper, Wyoming. As she was stopped at the intersection of Walsh and Second Street, she saw her estranged husband, Mr. Webb, in his Honda Ridgeline. Ms. Webb testified that as the two passed each other in the intersection, Mr. Webb yelled a profanity at her, but Ms. Webb ignored him and continued driving. A couple of blocks later, when Ms. Webb approached the intersection of 12th Street and Payne, she saw Mr. Webb approach a nearby stop sign and then begin to drive directly towards her car. Ms. Webb swerved in an attempt to avoid a collision but was unsuccessful. Mr. Webb hit the Murano with enough force that the airbags deployed and a number of car parts scattered across the road. Mr. Webb fled the area, and Ms. Webb exited her car and attempted to call 911.

[¶4] Before Ms. Webb could connect with the 911 operator, she heard "car engines revving up." When she looked up, she saw the Honda Ridgeline turn the corner. She ran into a nearby yard and Mr. Webb drove his vehicle quickly from the roadway, onto a sidewalk, and toward Ms. Webb. Ms. Webb

was able to jump out of the Ridgeline's path and, with the help of a Good Samaritan, sought refuge in the basement of the Samaritan's home. Again, Mr. Webb fled the scene, striking a parked vehicle in the process. After abandoning the Ridgeline and taking his mother's car, Mr. Webb drove to Las Vegas, Nevada, and turned himself into the authorities three days later.

[¶5] On July 1, 2014, the State charged Mr. Webb with one count of aggravated assault and battery with a deadly weapon in violation of Wyo. Stat. Ann. § 6-2-502(a)(ii) and (a)(iii) (LexisNexis 2013).[1] On July 31, 2014, the State dismissed the Information. The State filed a new Information the same day and added an additional count of aggravated assault and battery with a deadly weapon and one count of felony property destruction. The case was bound over to the district court, but on October 23, 2014, the State filed a new Information that added a count of attempted second degree murder, in violation of Wyo. Stat. Ann. §§ 6-1-301(a)(i) and 6-2-104 (LexisNexis 2013).[2]

[¶6] Before the charges alleged in the new Information were bound over to the district court, Mr. Webb's counsel requested that he receive a competency evaluation. The circuit court granted the motion, and after an evaluation was conducted at the Wyoming State Hospital, the circuit court deemed Mr. Webb competent to proceed. The case was bound over to the district court and proceeded to trial.

[¶7] The week-long trial began on July 27, 2015, and the jury found Mr. Webb guilty of all counts. The district court sentenced him to serve concurrent terms of five to seven

---

1. **§ 6-2-502. Aggravated assault and battery; penalty.**

(a) A person is guilty of aggravated assault and battery if he:

. . . .

(ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;

(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another[.]

2. **§ 6-1-301. Attempt; renunciation of criminal intention.**

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]

**§ 6-2-104. Murder in the second degree; penalty.**

Except as provided in W.S. 6-2-109, whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life.

years for each count of aggravated assault and battery with a deadly weapon, a concurrent term of one to three years for the felony property destruction, and a consecutive term of thirty to forty-five years for the attempted second degree murder.

## DISCUSSION

### Wyoming Rule of Criminal Procedure 48

[¶8] Mr. Webb contends the State violated his right to a speedy trial under W.R.Cr.P. 48. We review speedy trial claims *de novo. Rhodes v. State*, 2015 WY 60, ¶ 9, 348 P.3d 404, 407 (Wyo. 2015). The State originally charged Mr. Webb with one count of aggravated assault and battery with a deadly weapon on July 1, 2014. On July 31, 2014, the State dismissed the charge but filed a new Information charging Mr. Webb with two counts of aggravated assault and battery with a deadly weapon and one count of felony property destruction. On August 15, 2014, Mr. Webb filed a written demand for a speedy trial. On October 23, 2014, the State filed a new Information in an entirely new docket number that contained the previous three charges and added one count of attempted second degree murder. The State then moved to dismiss the July 31 Information. Mr. Webb argues that because he had filed a demand for a speedy trial before the State dismissed the July 31 Information and filed the October 23 Information, the State violated his speedy trial right under Rule 48(b)(7).

[¶9] The relevant portions of Rule 48 state:

**Rule 48. Dismissal; speedy trial.**

(a) *By attorney for the state.*—The attorney for the state may, by leave of court, file a dismissal of an indictment, information or citation, and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

(b) *Speedy trial.*—

(1) It is the responsibility of the court, counsel and the defendant to insure that the defendant is timely tried.

(2) A criminal charge shall be brought to trial within 180 days following arraignment unless continued as provided in this rule.

. . . .

(5) Any criminal case not tried or continued as provided in this rule shall be dismissed 180 days after arraignment.

. . . .

(7) A dismissal for lack of speedy trial under this rule shall not bar the state from again prosecuting the defendant for the same offense unless the defendant made a written demand for a speedy trial or can demonstrate prejudice from the delay.

[¶10] A plain reading of Rule 48(b)(7) makes it clear that Mr. Webb's speedy trial demand can affect the re-filing of charges only if the previous charges were dismissed due to a lack of speedy trial. W.R.Cr.P. 48(b)(7). That was not the case here. The State chose to file a new Information that included the second degree murder charge and then voluntarily dismissed the Information that had been filed on July 31, 2014. The dismissal could not have been based on a speedy trial violation because only ninety-two days had elapsed between the filing of the July 31 Information and its subsequent dismissal—approximately half of the 180 days allowed under Rule 48(b)(2).

[¶11] Mr. Webb relies on *Hall v. State*, 911 P.2d 1364 (Wyo. 1996), for his assertion that, so long as a defendant has filed a demand for a speedy trial, the State is barred from refiling charges after the original charges are dismissed for any reason. This is a gross misinterpretation of *Hall*. In *Hall*, the district court dismissed the original charge of concealing or disposing of stolen property at the prosecution's request. The prosecution then re-filed the charge, and the district court later dismissed the charge because more than 120 days had elapsed since Hall's arraignment.[3] The State filed the charge a third time and Hall was convicted. *Id.* at 1367. On appeal, Hall argued the charge should have been dismissed because almost two years had elapsed between the State's first filing of the charge and Hall's trial. *Id.* at 1370.

---

**3.** At the time of Hall's prosecution, Rule 48 required the State to bring defendants to trial within 120 days of arraignment. W.R.Cr.P. 48(B)(6) (LexisNexis 1991).

[¶12] The Court explained that Rule 48 implies that the 120-day period will begin anew when the State dismisses the original charge and re-files. *Id.* Therefore, the only arraignment relevant for the purposes of Rule 48 was the arraignment that followed the third filing of the charge. Significantly, the Court acknowledged that the third filing was appropriate because Hall had not filed a written demand for a speedy trial before the second dismissal of the charge, which was due to a Rule 48 violation. *Id.* Thus, *Hall* is readily distinguishable from this case, as Mr. Webb's charges were never dismissed for a Rule 48 violation.

[¶13] Mr. Webb also claims the State violated Rule 48 because it acted in bad faith when it dismissed the July 31, 2014 Information. However, the basis of this argument is meager, to say the least. Mr. Webb cites to the motion to dismiss he filed in the district court, wherein his counsel apparently quoted language from the State's motion to dismiss the July 31 Information.[4] Mr. Webb asserted that the State explained the need for the new Information was because the "State has filed a new case more accurately reflecting the charges in this matter and adding an additional count." Mr. Webb argues this is inconsistent with the prosecutor's verbal assertion at the motion hearing when he explained he made the decision to dismiss and re-file the Information after Mr. Webb chose not to accept a plea agreement. We do not find these assertions inconsistent with one another. While the assertions are not identical, they are not in conflict. Further, to the extent they arguably could be said to be inconsistent, Mr. Webb has provided no authority that stands for the conclusion that the statements demonstrate bad faith. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364-65, 98 S.Ct. 663, 668-69, 54 L.Ed.2d 604 (1978) (due process is not offended when a state prosecutor carries out a threat to indict the defendant on a more serious charge after the defendant does not plead guilty to the original charge). Because Mr. Webb has failed to present any evidence or authority to persuade this Court that the State acted in bad faith when it dismissed the July 31 Information, and because Rule 48(b)(7) is not applicable, we conclude the State did not violate Mr. Webb's speedy trial rights under Rule 48.[5]

### Constitutional Right to a Speedy Trial

[¶14] Mr. Webb also argues that his speedy trial rights under the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Wyoming Constitution were violated. Again, we review this claim *de novo. Rhodes*, ¶ 9, 348 P.3d at 407.

[¶15] When analyzing a constitutional speedy trial claim, we look at the four factors established by the United States Supreme Court in *Barker v. Wingo*: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant." *Id.*, ¶ 17, 348 P.3d at 410 (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)). The purpose of this analysis is to determine " 'whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial.' " *Rhodes*, ¶ 17, 348 P.3d at 411 (quoting *Warner v. State*, 2001 WY 67, ¶ 10, 28 P.3d 21, 26 (Wyo. 2001)). Unlike our analysis under Rule 48, "the 'speedy trial clock begins to run at the time of arrest, information, or indictment, whichever occurs first.' " *Rhodes*, ¶ 17, 348 P.3d at 411 (quoting *Ortiz v. State*, 2014 WY 60, ¶ 40, 326 P.3d 883, 893 (Wyo. 2014)). Further, a dismissal of a charge that is replaced with another does not affect the speedy trial clock. *Id.* "[T]he periods of formal charge by a single sovereign for the same criminal act are tacked [together] even if the charges are different." *Mascarenas v.*

---

4. The State's motion to dismiss the July 31 Information is not included in the record on appeal.

5. The dissent argues for a new requirement under Rule 48 requiring the State to "demonstrate it did not dismiss and refile in order to avoid the speedy trial deadline" before the 180 day time limit is reset. We have not previously found such a requirement in the rule. Attorneys and judges in pending cases likely have relied on the rule without such a requirement. If such a requirement is to be added to Rule 48, that requirement should be accomplished by an amendment to the rule, with advance notice to the bar and to trial courts, and not by this Court suddenly changing its interpretation of the rule.

*State*, 2013 WY 163, ¶ 11, 315 P.3d 656, 661 (Wyo. 2013) (quoting *Strandlien v. State*, 2007 WY 66, ¶ 8, 156 P.3d 986, 990 (Wyo. 2007)).

[¶16] Turning to the length of the delay, this Court has never held that a specific length of delay is sufficient to constitute an automatic speedy trial violation. *Mascarenas*, ¶ 12, 315 P.3d at 661. However, the length of the delay is a threshold factor that will determine whether further analysis of the remaining *Barker* factors is necessary. *See Tate v. State*, 2016 WY 102, ¶ 26, 382 P.3d 762, 768 (Wyo. 2016). Delays approaching one year will generally trigger consideration of all of the speedy trial factors. *Id.*, ¶ 29, 382 P.3d at 769. The State first filed charges against Mr. Webb on July 1, 2014, and he was convicted on July 31, 2015, an elapsed time period of 396 days. Because this exceeds a year, we will evaluate the other *Barker* factors. However, although we will consider the other factors, we do not find the length of delay in this circumstance weighs in Mr. Webb's favor. Mr. Webb was convicted of multiple serious felony offenses, and the trial concluded only thirty-one days after the one-year anniversary of the State filing the first Information. *See id.*, ¶ 31, 382 P.3d at 769 (Tate's 387 day delay "barely crosses the 'bare minimum needed to trigger judicial examination of the claim' " and, therefore, the first factor does not weigh in his favor).

[¶17] The second *Barker* factor requires us to consider the reasons for the delay in bringing Mr. Webb to trial. *Rhodes*, ¶ 17, 348 P.3d at 410. "We weigh the delays caused by the State against those caused by the defendant, keeping in mind it is the State's burden to bring a defendant to trial in a timely manner and it must show that the delays were reasonable and necessary." *Durkee v. State*, 2015 WY 123, ¶ 16, 357 P.3d

1106, 1112 (Wyo. 2015). Delays caused by a defendant, such as requests for continuances, changes in defense counsel, and defendant filed pre-trial motions, may disentitle a defendant to speedy trial safeguards. *Castellanos v. State*, 2016 WY 11, ¶ 73, 366 P.3d 1279, 1300 (Wyo. 2016). With respect to delays attributable to the State, deliberate attempts to delay the trial in order to impede the defense should be weighed heavily against the State. *Durkee*, ¶ 16, 357 P.3d at 1112. However, circumstances such as overcrowded courts and their schedules are more neutral reasons for delay, and should not be weighed as heavily against the State. *Id.* Further, "[d]elays attributable to competency evaluations fall into the 'neutral' category in the *Barker* balancing test." *Castellanos*, ¶ 72, 366 P.3d at 1300.

[¶18] Mr. Webb argues that, with the exception of the delay caused by the competency evaluation, the entirety of the delay in Mr. Webb's trial was caused by the State. Certainly, some delay is attributable to the State and its decision to twice dismiss and re-file the Information. However, Mr. Webb was also responsible for some of the delay. As the State points out, Mr. Webb fled to Las Vegas immediately after commission of the crime. He turned himself in to the Las Vegas police on July 3, 2014, and arrived in Wyoming to face the charges against him on July 23, 2014. Therefore, while the State had filed charges on July 1, 2014, Mr. Webb's decision to flee the jurisdiction delayed any progress in the proceedings by twenty-three days.

[¶19] Further, Mr. Webb is also partially responsible for choosing the date in which his trial began. At a scheduling conference, the district court offered a proposed trial date in early July.[6] However, Mr. Webb's attorneys requested a different trial date because the proposed date would allow for only four and a half days of trial instead of the five days

---

**6.** The State asserts the record indicates the court offered a trial setting that began on June 29, 2015. However, the record does not clearly reflect that date. Instead, this Court is able to glean the proposed date only from a statement made by the prosecutor: "Would it be more advantageous—my trial calendar doesn't go that far; but I'm assuming you have a stack around the first part of July, around the 5th, if my math is accurate." The district court responded: "We do;

however, on that day, we run into the parade day issue, which prevents us from going the full five." At no point in the transcript does the court or the parties identify the exact date being discussed. July 5, 2015, fell on a Sunday, so it is possible the proposed trial date was July 6. Due to the ambiguity in the record, we will give Mr. Webb the benefit of the doubt and proceed as if the proposed trial date was July 6.

Mr. Webb had requested. The district court proposed the trial begin on July 27, 2015, and Mr. Webb's attorneys consented to that trial date. Because Mr. Webb's attorneys did not want the earlier trial date, the trial was delayed an additional twenty-one days.

[¶20] Finally, the trial was delayed seventy-five days so that Mr. Webb could undergo a competency evaluation. Delays attributable to competency evaluations are considered a neutral factor in the analysis. *Castellanos*, ¶ 72, 366 P.3d at 1300. When we deduct the neutral delays and the delays attributable to Mr. Webb, there was a 277 day delay that can be attributed to the State's decision to twice dismiss and re-file the Information, in addition to the usual course of a case making its way to trial. This delay is far less than a year and is not an unusual amount of time to prepare for a trial in this type of case. Further, the record does not disclose any facts that would support a finding that the State dismissed the first two Informations in an attempt to thwart Mr. Webb's defense. *See Mascarenas*, ¶ 19, 315 P.3d at 662. Since both Mr. Webb and the State are responsible for some delay and the substantial delay from the competency evaluation is neutral, we find this factor to be neutral in the overall speedy trial analysis.

[¶21] Next, we must consider whether Mr. Webb asserted his right to a speedy trial. *Rhodes*, ¶ 17, 348 P.3d at 410. "Although a defendant is not required to assert his right to a speedy trial, the vigor with which the defendant asserted his right is an important consideration in determining the reasonableness of any delay." *Griggs v. State*, 2016 WY 16, ¶ 68, 367 P.3d 1108, 1130 (Wyo. 2016). The record is clear that Mr. Webb filed formal demands for a speedy trial on two occasions. Further, Mr. Webb filed a motion to dismiss the charges against him on the basis of a speedy trial violation.

[¶22] However, despite these assertions, a week before the trial was scheduled to commence, Mr. Webb's counsel requested that Mr. Webb undergo a second competency evaluation. Further, Mr. Webb wrote a letter to the district court approximately two weeks before the commencement of trial, requesting that the district court appoint him new coun-

sel. At the hearing on the matter, Mr. Webb specifically requested new counsel and a continuance of the trial date so that his new counsel could prepare for trial. While the district court ultimately denied both of these requests, making these requests in the first instance is inconsistent with one vigorously asserting his right to a speedy trial. Therefore, this factor weighs slightly in Mr. Webb's favor, but is given little weight in the overall speedy trial analysis. *Lafferty v. State*, 2016 WY 52, ¶¶ 57-58, 374 P.3d 1244, 1254 (Wyo. 2106) (although the defendant filed a demand for speedy trial, his conduct caused substantial delays; thus, this factor weighs only slightly in his favor); *Humphrey v. State*, 2008 WY 67, ¶ 27, 185 P.3d 1236, 1245 (Wyo. 2008) (defendant's assertion of her right to speedy trial only weighs slightly in her favor due to her various waivers of speedy preliminary hearings, requests for continuances, numerous pre-trial motions, and request for a stay in the proceedings); *Campbell v. State*, 999 P.2d 649, 656 (Wyo. 2000) ("Because less than vigorous assertions of the right to a speedy trial are given little weight, this factor too, weights against a speedy trial claim.").

[¶23] The final factor in the *Barker* analysis requires us to consider the prejudice Mr. Webb suffered as a result of the delay in his trial. *Rhodes*, ¶ 17, 348 P.3d at 410. We consider three categories within prejudice:

"(1) lengthy pretrial incarceration; (2) pretrial anxiety; and (3) impairment of the defense." (*Ortiz*, ¶ 59, 326 P.3d at 896 (quoting *Berry [v. State*, 2004 WY 81] ¶ 46, 93 P.3d [222] at 237 [ (Wyo. 2004) ])). "Pretrial anxiety 'is the least significant' factor and because a 'certain amount of pretrial anxiety naturally exists,' an appellant must demonstrate that he suffered 'extraordinary or unusual' pretrial anxiety." *Potter v. State*, 2007 WY 83, ¶ 41, 158 P.3d 656, 666 (Wyo. 2007) (quoting *Whitney v. State*, 2004 WY 118, ¶ 54, 99 P.3d 457, 475 (Wyo. 2004)). "The impairment of defense factor is the most serious because it impacts the defendant's ability to prepare his case and skews the fairness of the entire system." *Durkee*, ¶ 37, 357 P.3d at 1116.

*Castéllanos*, ¶ 88, 366 P.3d at 1303. A defendant is not required to establish prejudice in order to prevail on a speedy trial claim; however prejudice, or the lack thereof, must be considered within the *Barker* analysis. *Lafferty*, ¶ 60, 374 P.3d at 1254. Additionally, if a defendant claims prejudice, he has the burden to demonstrate and substantiate the prejudice. *Tate*, ¶ 38, 382 P.3d at 770 (citing *Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004)). If the defendant fails to demonstrate prejudice, the other three *Barker* factors must weigh heavily in his favor to establish a speedy trial violation. *Id.*

[¶24] As stated above, 396 days elapsed between the date the State filed the first Information against Mr. Webb and the conclusion of his trial. We recognize that Mr. Webb likely experienced pretrial anxiety regarding finances, employment, and ability to associate with family, just as most defendants experience in that situation. *Tate*, ¶ 40, 382 P.3d at 771; *Lafferty*, ¶ 63, 374 P.3d at 1255; *Rhodes*, ¶ 20, 348 P.3d at 411-12; *Mascarenas*, ¶ 22, 315 P.3d at 663; *Boucher v. State*, 2011 WY 2, ¶ 19, 245 P.3d 342, 351 (Wyo. 2011). However, Mr. Webb's blanket statement that he lost his liberty, home, relationship with his children, missed his daughter's wedding, suffered financial harm, was unable to adequately respond to divorce and child support proceedings, and suffered degradation and anxiety, is insufficient to establish the extraordinary or unusual pretrial anxiety required to show prejudice. *Lafferty*, ¶ 63, 374 P.3d at 1255. While these consequences are certainly undesirable, they are not extraordinary or unusual when it comes to pre-trial incarceration, and do not weigh in favor of a finding of prejudice.

[¶25] Mr. Webb also argues he suffered prejudice because the delay impaired his defense. When reviewing whether the delay impaired the defense, we consider "whether the delay resulted in a loss of evidence or impaired the defense by the 'death, disappearance, or memory loss of witnesses for the defense.'" *Castellanos*, ¶ 90, 366 P.3d at 1303. Mr. Webb first argues the delay prevented his attorneys from inspecting Ms. Webb's vehicle because the police had already returned it to Ms. Webb by the time they were preparing for trial. Mr. Webb's assertion is wholly unsupported by the record. At the motion to dismiss hearing, the following exchange occurred between the district court and Mr. Webb's counsel:

THE COURT: And then what's your understanding of the time line on the vehicle that you've discussed?

. . . .

[DEFENSE COUNSEL]: Your Honor, it's my understanding from [co-counsel] that the Murano was never taken into evidence. In fact, it was just released back to the victim.

THE COURT: So how does the delay impact that if it never was taken into evidence?

[DEFENSE COUNSEL]: I don't believe a delay impacts that, but a prejudice to Mr. Webb in that we could not have Mr.—that we could not inspect that.

THE COURT: That would—the condition would have existed even if there was a timely trial in the first filing; correct?

[DEFENSE COUNSEL]: Under this scenario, yes. Yes.

The record is clear that the delay in bringing this case to trial had no impact whatsoever on the defense's ability to access the vehicle as it was never in the State's possession.

[¶26] Mr. Webb further argues he was prejudiced when "witness recollections changed as a result of the passage of time, and not in Mr. Webb's favor." This allegation, however, is not supported by anything more than Mr. Webb's bare assertions. Neither Mr. Webb's brief nor the record show that any of the changes in the witnesses' statements were due to any sort of memory loss. Instead, it appears to simply be a case of inconsistent statements and testimony, and Mr. Webb had the opportunity to cross-examine each of those witnesses about the inconsistencies. For this reason, we find Mr. Webb's defense was not hindered by the delay and this factor does not weigh in his favor.

[¶27] When we balance all of the *Barker* factors, we conclude that Mr. Webb's right to a speedy trial was not violated. The reason for the delay is a neutral factor, while Mr.

Webb's assertion of his speedy trial right weighs only slightly in his favor. The prejudice factor weights heavily in the State's favor, as Mr. Webb has failed to provide any facts or argument, other than general assertions, that he was in any way prejudiced.

### Prosecutorial Misconduct

[¶28] Mr. Webb argues the prosecutor committed misconduct in his closing argument when he discussed the defense's eyewitness expert. The parties agree that Mr. Webb did not object to the prosecutor's closing statement and, therefore, our review is limited to a search for plain error. To succeed on plain error review, Mr. Webb must demonstrate that: (1) the record clearly reflects the error; (2) the alleged error violated a clear and unequivocal rule of law; and (3) the alleged error caused Mr. Webb material prejudice. *Anderson v. State*, 2014 WY 74, ¶ 40, 327 P.3d 89, 99 (Wyo. 2014). This Court is hesitant to find plain error in a closing argument because it is "reluctant to place the trial court in a position of having to *sua sponte* challenge remarks of counsel when there is otherwise no objection thereto." *Solis v. State*, 2013 WY 152, ¶ 40, 315 P.3d 622, 632 (Wyo. 2013). While prosecutors are given wide latitude in closing arguments, there are some boundaries. *Carroll v. State*, 2015 WY 87, ¶ 32, 352 P.3d 251, 259 (Wyo. 2015). When determining whether those boundaries have been crossed, we consider the entire argument, and not simply sentences and phrases that may be out of context. *Id.*

[¶29] We recite the paragraph containing the offending statement in its entirety to give full context to the prosecutor's argument:

We heard testimony yesterday from Dr. Loftus. He talked a lot of generalities about people's memories. Ladies and gentlemen, the important thing I think to take away from Dr. Loftus's testimony was that he's testified 380 times prior, one time for the prosecution. Pretty fat check, 7,500 bucks. **But he generally didn't talk about this case.** He also said physical evidence will corroborate eyewitnesses. Ladies and gentlemen, you have that physical evidence. You have the photos. You got the tire tracks through the yard. You got the path of travel, where the eyewitnesses put Ms. Webb. You have the defendant's vehicle. You have photos of Julie's vehicle. You get to judge by the instructions what weight to give testimony. That is the role of the jury. You can determine that. But you also have to look at all of the evidence. Mr. Loftus said, you know, I didn't look at photographs; I didn't listen to the 911 tape, or the police reports, some of the witness interviews. You have far more evidence before you folks than Dr. Loftus had. It is the little things that you look for. Look at the tire tracks. Do they comport with what the witnesses said? Does it comport with what Julie said? If you look at the rim marks and the gouges across Payne, does that comport with what Officer Rockwell said about his speed? Greg George, who said he had a Ford and just passed him on the right-hand side of the road? It does, ladies and gentlemen.

(emphasis added). Mr. Webb objects to the emphasized sentence in the prosecutor's closing argument cited above. Therefore, the alleged error is clearly reflected in the record and Mr. Webb has satisfied the first part of the plain error analysis.

[¶30] Mr. Webb argues this statement was a misstatement of the law because it implied to the jury that Dr. Loftus should have testified about the specifics of the case, although established case law would have prohibited such testimony. Wyoming law is clear that juries "are extended the responsibility to resolve the factual issues, judge the credibility of witnesses, and ultimately determine whether the accused is guilty or innocent." *Martin v. State*, 2007 WY 76, ¶ 38, 157 P.3d 923, 932 (Wyo. 2007). Expert testimony that opines on the guilt of the defendant or the credibility of a witness invades the province of the jury and is impermissible. *Id.*; *see also Seward v. State*, 2003 WY 116, ¶ 19, 76 P.3d 805, 814 (Wyo. 2003). However, even with admissible expert testimony, the jury "may give whatever weight and credence it may to the expert testimony as well as all the evidence in reaching a verdict." *Martin*, ¶ 38, 157 P.3d at 932.

[¶31] Upon review of the prosecutor's statement in the context of the entire closing argument, we conclude the prosecutor did not attempt to mislead the jury into believing Dr. Loftus should have testified about matters the law would not allow. While the prosecutor commented that Dr. Loftus spoke in generalities and did not talk about this particular case, the prosecutor also stated that Dr. Loftus testified that the "physical evidence will corroborate eyewitnesses." The prosecutor then discussed the evidence presented, how that evidence was consistent with witness testimony, and encouraged the jury to look at all of the evidence presented. Thus, the prosecutor was using a statement made by Dr. Loftus to shift the jury's focus back to the evidence presented, as opposed to focusing on Dr. Loftus' extensive and general testimony about the reliability of eyewitness testimony. This is not improper and Mr. Webb has failed to demonstrate a violation of a clear and unequivocal rule of law.

[¶32] Finally, Mr. Webb has failed to demonstrate that the result of the trial would have been different if the prosecutor had not made the statement in question. *Anderson*, ¶ 40, 327 P.3d at 99. The statement was isolated and consisted of only one sentence in a closing argument that consumes fifteen pages of transcript. *See Talley v. State*, 2007 WY 37, ¶ 24, 153 P.3d 256, 264 (Wyo. 2007) (no prejudice in closing argument when the comment was fleeting); *Trujillo v. State*, 2002 WY 51, ¶ 15, 44 P.3d 22, 28 (Wyo. 2002) (isolated remark in closing was not prejudicial). Further, to the extent the prosecutor's isolated statement could have made inappropriate suggestions to the jury, the jury was instructed multiple times by the district court that the jury is the sole judge of credibility of all witnesses, including experts, and that statements by counsel are not facts or evidence. We presume the jury followed the instructions. *Bruce v. State*, 2015 WY 46, ¶ 75, 346 P.3d 909, 931 (Wyo. 2015). Thus, Mr. Webb has failed to establish that the prosecutor's statement in closing argument amounted to plain error.

### Ineffective Assistance of Counsel

[¶33] Mr. Webb asserts that he received ineffective assistance of trial counsel

when his counsel did not request a jury instruction on accident. He argues that without an instruction, there was no way the jury could have acquitted him of the aggravated assault and battery charge or the attempted second degree murder charge. "Claims of ineffective assistance of counsel involve mixed questions of law and fact and are reviewed *de novo*." *Starr v. State*, 2017 WY 61, ¶ 3, 395 P.3d 180, 181 (Wyo. 2017).

[¶34] In order to prevail on an ineffective assistance of counsel claim, Mr. Webb must satisfy the two-part test from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984): First, Mr. Webb must show that counsel's performance was deficient, and second, he must show that he was prejudiced by the deficient performance. *Starr*, ¶ 4, 395 P.3d at 181-82. An attorney performs deficiently when he or she "fail[s] to render such assistance as would have been offered by a reasonably competent attorney." *Bloomer v. State*, 2010 WY 88, ¶ 18, 233 P.3d 971, 976 (Wyo. 2010). In order to show prejudice, Mr. Webb must demonstrate a reasonable probability exists that, absent counsel's deficient performance, the outcome of his trial would have been different. *Galbreath v. State*, 2015 WY 49, ¶ 5, 346 P.3d 16, 18 (Wyo. 2015). Mr. Webb has the burden of proving both parts of this analysis, and failure to demonstrate either is fatal to his claim on appeal. *Id.* For this reason, "[a]n ineffectiveness claim may be disposed of solely on the ground of lack of sufficient prejudice." *Dettloff v. State*, 2007 WY 29, ¶ 19, 152 P.3d 376, 382 (Wyo. 2007).

[¶35] Here, we need not determine whether counsel was deficient because Mr. Webb has failed to demonstrate that the outcome of the trial would have been different had the jury received an accident instruction. Mr. Webb spends a significant amount of his argument explaining why an accident instruction would have been appropriate in these circumstances, but provides only a conclusory basis that the lack of the instruction was prejudicial. Additionally, Mr. Webb has not given this Court any indication of what an accident instruction in this case should look like, leaving us to speculate about what trial

counsel should have suggested. *See Duke v. State*, 2004 WY 120, ¶ 78, 99 P.3d 928, 952 (Wyo. 2004) ("[Duke] contends that some sort of accident instruction should have been given in defense of the murder charges but has failed to explain what such an instruction would have entailed under the facts of this case.")

[¶36] Even assuming defense counsel had requested an accident instruction and the district court had granted the request, it would not have changed the outcome of the proceeding. Mr. Webb does not argue the district court failed to properly instruct the jury about the elements of aggravated assault and battery and attempted second degree murder. As other courts have recognized, if the element instructions given to the jury were otherwise correct, it is unlikely that omitting an accident instruction would ever satisfy a test that requires an appellant demonstrate a different outcome at trial. *State v. Crawford*, 73 N.E.3d 1110, 1114 (Ohio Ct. App. 2016); *see also Ruiz v. W.L. Montgomery*, No. SA CV 13-11641 BRO, 2015 WL 4720504, at *2 (C.D. Cal. June 30, 2015); *Com. v. Tembe*, 80 Mass.App.Ct. 1107, 954 N.E.2d 74, *1 (2011); *Auten v. Gomez*, 162 F.3d 1167, *1 (9th Cir. 1998). This is significant because "the defense of accident is not an excuse or justification for the admitted act; it is a complete denial that an unlawful act was committed because the defendant did not have the requisite mens rea." *Crawford*, 73 N.E.3d at 1115. Therefore, an accident instruction serves simply to remind the jury that evidence of an accident may negate the defendant's criminal intent. *Id.*

[¶37] Here, the district court properly instructed the jury that in order to convict Mr. Webb of aggravated assault and battery, the jury had to determine beyond a reasonable doubt that Mr. Webb either "attempted to cause bodily injury to another person with a deadly weapon" or "threatened to use a drawn deadly weapon...." The jury was also instructed that "[a] 'threat' is an expression of an intention to inflict pain, injury or punishment." With respect to attempted second degree murder, the court instructed the jury it must find beyond a reasonable doubt that Mr. Webb intended to commit the crime of

second degree murder, and the elements of second degree murder require that Mr. Webb purposely and maliciously acted. The jury was informed "purposely" means intentionally and that "malice" means "the act constituting the offense as done recklessly under circumstances manifesting an extreme indifference to the value of human life...." Mr. Webb was not precluded from arguing the events at issue were the product of an accident and the jury was certainly at liberty to consider that argument. However, because the jury determined Mr. Webb was guilty of aggravated assault and battery and attempted second degree murder, it necessarily determined Mr. Webb's actions were intentional and not due to an accident. *See id.* ("If the jury believes the defendant's accident argument, it would be required to find the defendant not guilty pursuant to the court's general instructions."), *Tembe*, 954 N.E.2d 74, *1 ("As both crimes require proof of specific intent, the jury could not have found the defendant guilty of either crime if [it] believed, as defense counsel argued in his closing, that the event was an accident."), *Auten*, 162 F.3d 1167, *1 (the jury's finding of malice precluded a finding of accidental killing).

[¶38] Mr. Webb has failed to demonstrate that the outcome of his trial would have been different had counsel requested an accident instruction and, therefore, has failed to prove prejudice. Consequently, Mr. Webb has failed to demonstrate that he received ineffective assistance of trial counsel.

### Inference of Malice Instruction

[¶39] Mr. Webb claims his right to a fair trial was denied when the district court provided the following instruction to the jury:

> You are instructed that you may, but are not required to, infer malice from the use of a deadly weapon. The existence of malice, as well as each and every element of the charge of Attempt to Commit Second Degree Murder, must be proved beyond a reasonable doubt.

Mr. Webb claims that, while this Court has previously approved of this exact instruction, it is no longer appropriate due to the new definition of "malice" in homicide cases. Mr.

Webb did not object to this instruction at trial; therefore, our review is again limited to a search for plain error. *Anderson*, ¶ 40, 327 P.3d at 99.

[¶40] The instruction is clearly reflected in the record; however, Mr. Webb cannot demonstrate the district court violated a clear and unequivocal rule of law in a clear and obvious, and not merely arguable, way when it gave the jury this instruction. *See Jealous v. State*, 2011 WY 171, ¶ 11, 267 P.3d 1101, 1104 (Wyo. 2011). In fact, Mr. Webb acknowledges that this Court has previously approved instructions such as this, most recently in *Hereford v. State*, 2015 WY 17, ¶¶ 21, 22, 26, 342 P.3d 1201, 1207-08 (Wyo. 2015). In *Hereford*, we concluded "where a defendant's state of mind is at issue in a criminal case like this one, and if the facts and circumstances allow, our precedent permits a judge to instruct the jury that is may presume or infer malice by the use of a deadly weapon." *Id.*, ¶ 26, 342 P.3d at 1208.

[¶41] Further, this Court's approval of this instruction in *Hereford* occurred approximately three months *after* we refined the definition of "malice" in *Wilkerson v. State*, 2014 WY 136, 336 P.3d 1188 (Wyo. 2014) and approximately six months before Mr. Webb's trial. Granted, the appellant in *Hereford* was convicted using the definition of malice in effect before *Wilkerson*. However, we did not make any suggestion in *Hereford* that would lead one to believe this type of jury instruction would be inapplicable under the new definition of malice. Therefore, we cannot say the district court violated a clear and unequivocal rule of law in a clear and unequivocal, and not merely arguable, way when it gave an instruction that was identical to one this court had affirmatively approved in a second degree murder case only a short time before trial. Mr. Webb has failed to carry his burden of showing plain error.

### Double Jeopardy

[¶42] In his final argument, Mr. Webb claims that his convictions for aggravated assault and battery with a deadly weapon and attempted second degree murder—that were both premised upon him driving his vehicle through the yard and almost striking Ms. Webb—violated the United States Constitution's prohibition against double jeopardy. Mr. Webb did not raise a double jeopardy claim in the district court, thereby limiting our review of his claim to one for plain error. *Bowlsby v. State*, 2013 WY 72, ¶ 6, 302 P.3d 913, 915-16 (Wyo. 2013).

[¶43] The record is clear that Mr. Webb was convicted and sentenced separately for the aggravated assault and battery and the attempted second degree murder, satisfying the first part of the plain error test. Mr. Webb, however, cannot demonstrate the district court violated a clear and unequivocal rule of law when it entered convictions and sentenced him for both crimes. He acknowledges that this Court found contrary to his position on this precise issue less than one year ago in *Jones v. State*, 2016 WY 110, 384 P.3d 260 (Wyo. 2016); however, he asserts the *Jones* opinion fails to take into account the United States Supreme Court's decision in *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985).

[¶44] In *Jones*, this Court held that under the *Blockburger* "same elements" test, convictions for aggravated assault and battery with a deadly weapon and attempted second degree murder, do not run afoul of the United States Constitution's prohibition against double jeopardy, even though both charges stem from the exact same factual premise; *Jones*, ¶ 22, 384 P.3d at 266; *see also Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The basis of this conclusion was that each crime required an element the other did not. Attempted second degree murder requires the presence of malice, while aggravated assault and battery with a deadly weapon requires the use of a deadly weapon. We explained:

We do not concern ourselves with how those elements are proven in that defendant's case—that is, we look to what the legislature says must be proven, not the facts or evidence used in a particular case to establish that ultimate fact. Nor is it of any moment that such facts or evidence incidentally may also tend to prove an element of another crime with which the defendant is charged.

*Jones,* ¶ 12, 384 P.3d at 264 (citations omitted).

[¶45] Although *Jones* was published almost a year after Mr. Webb had been sentenced, it did not overrule any precedent that would have supported a conclusion that Mr. Webb's convictions and sentences violated the prohibition against double jeopardy. Instead, it simply reaffirmed our decision in *Sweets v. State,* 2013 WY 98, 307 P.3d 860 (Wyo. 2013). In *Sweets,* this Court accepted the *Blockburger* same elements test as the exclusive analysis used in Wyoming when determining whether convictions and sentences should merge to comply with double jeopardy requirements. *Id.,* ¶ 49, 307 P.3d at 875. In doing so, we joined the United States Supreme Court by disavowing the use of an analysis that focused on the facts and evidence relied upon by the State in proving multiple crimes, known as the same facts or evidence test. *Id.* (overruling *Bilderback v. State,* 13 P.3d 249 (Wyo. 2000)); *United States v. Dixon,* 509 U.S. 688, 704-09, 113 S.Ct. 2849, 2860-63, 125 L.Ed. 2d 556 (1993) (overruling *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990)). While Mr. Webb's double jeopardy claim may have arguably had merit using the same facts or evidence test, that test had been relegated to the historical archives of our jurisprudence two years before his trial began. Therefore, the district court properly applied the clearly established law that applied at the time of Mr. Webb's trial and sentencing.

[¶46] Further, we are not persuaded that our decision in *Jones* is affected by the United States Supreme Court's decision in *Ball.* In *Ball,* the defendant was charged and convicted of receiving a firearm shipped in interstate commerce in violation of 18 U.S.C. §§ 922(h)(1) and 924(a), and for possessing that same firearm in violation of 18 U.S.C.App § 1202(a)(1). *Ball,* 470 U.S. at 857, 105 S.Ct. at 1669. Utilizing the *Blockburger* same elements test, the Court concluded that Congress did not intend to subject the defendant to two convictions because "proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon." *Id.,* 470 U.S. at 862, 105 S.Ct. at 1672 (emphasis in original).

[¶47] The elements in question here are malice (attempted second degree murder) and use of a deadly weapon (aggravated assault and battery with a deadly weapon). Unlike the relationship between the elements of receipt and possession in *Ball,* malice (and the second degree murder statute in general) does not *necessarily* include proof of use of a deadly weapon. As we explained in *Jones,* there are many ways an individual can attempt to kill another that does not include the use of a deadly weapon. *Jones,* ¶ 19, 384 P.3d at 265. Using the straightforward *Blockburger* same elements test, as used in *Ball,* we are led to the same conclusion we reached in *Jones*—convictions for attempted second degree murder and aggravated assault and battery with a deadly weapon do not violate the Constitution's prohibition against double jeopardy.

### CONCLUSION

[¶48] Mr. Webb received a speedy trial as required by W.R.Cr.P. 48 and the United States and Wyoming Constitutions. The prosecutor did not commit misconduct in his closing argument when he discussed Dr. Loftus, and Mr. Webb received the effective assistance of trial counsel. Further, the district court properly instructed the jury that it may infer malice from Mr. Webb's use of a deadly weapon. Finally, the district court did not violate Mr. Webb's constitutional protection against double jeopardy when it imposed separate sentences for aggravated assault and battery with a deadly weapon and attempted second degree murder.

[¶49] Affirmed.

FOX, Justice, concurring in part, and dissenting in part, in which BURKE, Chief Justice, joins.

[¶50] I concur in most of the majority opinion, but I write separately on one issue upon which I fear that the Court has proceeded down a technically correct trail of precedent to arrive at a rule of law whose application yields a result that is contrary to the spirit and purpose of the original rule. Our acquiescence in the State's repeated circumvention of the speedy trial rule by dis-

missing and refiling to start the clock anew[7] has the effect of eviscerating W.R.Cr.P. 48. The doctrine of *stare decisis* supports the majority's analysis. And while I recognize the importance of that doctrine to further the "evenhanded, predictable, and consistent development of legal principles, foster[ ] reliance on judicial decisions, and contribute[ ] to the actual and perceived integrity of the judicial process," *Brown v. City of Casper*, 2011 WY 35, ¶ 43, 248 P.3d 1136, 1146 (Wyo. 2011) (quoting *State ex rel. Wyo. Worker's Comp. Div. v. Barker*, 978 P.2d 1156, 1161 (Wyo. 1999)), I believe this is one of those times that "we should be willing to depart from precedent [because] it is necessary 'to vindicate plain, obvious principles of law and remedy continued injustice.' " *Id.* (internal citation omitted). For these reasons, I concur in part, and dissent on the speedy trial issue.

### W.R.Cr.P. Rule 48

[¶51] "A fundamental purpose of the speedy trial statute and rule is to prevent unnecessary prosecutorial and judicial delays to a pending criminal proceeding. The public interest and the interest of the accused require an expeditious determination of guilt or innocence so that the guilty can be sentenced and the innocent exonerated." *People v. Moye*, 635 P.2d 194, 195 (Colo. 1981) (citations omitted). "The purpose of the rule ensures not only a criminal defendant's constitutional right to a speedy trial, but also furthers important judicial policy considerations of relief of trial court congestion, prompt processing of all cases reaching the courts and advancement of the efficiency of criminal justice process." *State v. Wells*, 443 A.2d 60, 63 (Me. 1982).

[¶52] Allowing the State to restart the speedy trial clock by dismissing and refiling charges defeats the purpose of the rule.[8] I would adopt the rule applied in other jurisdictions where the speedy trial period begins anew when charges are refiled, and recognize an exception where the intent of the dismissal is to avoid the application of the speedy trial rule. As we noted in *Rhodes v. State*, 2015 WY 60, ¶ 15, 348 P.3d 404, 409 (Wyo. 2015): "In light of our precedent holding that the speedy trial period begins anew when charges are re-filed against a defendant, there is merit to an exception for cases in which the dismissal and refiling of charges is intended or clearly operates to circumvent the requirements of Rule 48." *See also People v. Walker*, 252 P.3d 551, 552 (Colo. App. 2011); *People v. Van Schoyck*, 232 Ill.2d 330, 328 Ill.Dec. 267, 904 N.E.2d 29, 34 (2009) ("State may not avoid a speedy-trial demand by dismissing a charge only to refile the identical charge for the identical offense based on the identical acts."); *State v. Goss*, 245 Kan. 189, 777 P.2d 781, 784 (1989) ("State cannot dismiss and refile charges solely to set the statutory clock back to zero."). We observed in *Rhodes* that, while we have not yet sanctioned such an exception, it "would be consistent with Wyoming precedent interpreting W.R.Cr.P. 48(a), which permits the State to dismiss charges against a defendant by 'leave of court' " and "would give meaning to W.R.Cr.P. 48(b)(3)(C), as that provision would operate to toll the time between dismissal and re-filing in those cases where the exception applies." 2015 WY 60, ¶ 15, 348 P.3d at 410.

[¶53] A rule that would allow the speedy trial clock to restart only where the intent of

---

7. We have seen numerous appeals in the last ten years where the State has filed, dismissed, and refiled charges, resulting in more than 180 days from the initial arraignment to trial. *See, e.g., Tate v. State*, 2016 WY 102, 382 P.3d 762 (Wyo. 2016); *Rhodes v. State*, 2015 WY 60, 348 P.3d 404 (Wyo. 2015); *Anderson v. State*, 2014 WY 74, 327 P.3d 89 (Wyo. 2014); *Ortiz v. State*, 2014 WY 60, 326 P.3d 883 (Wyo. 2014); *Seteren v. State*, 2007 WY 144, 167 P.3d 20 (Wyo. 2007). *See also State v. Bridger*, No. S-14-0161, Order Granting State's Expedited Petition for Writ of Review/Certiorari and Remanding for Further Consideration (Wyo. S.Ct. June 17, 2014).

8. Federal courts applying the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), have recognized this. *See e.g., United States v. Rojas-Contreras*, 474 U.S. 231, 239, 106 S.Ct. 555, 559, 88 L.Ed.2d 537 (1985) (Blackmun, J., concurring in the judgment, recognizing the reason federal law does not permit the clock to restart when the government dismisses and refiles is to "protect[ ] against governmental circumvention of the speedy-trial guarantee"); *United States v. Hoslett*, 998 F.2d 648, 658 n.12 (9th Cir. 1993) ("If the clock began anew, the government could circumvent the limitations of the Speedy Trial Act by repeatedly dismissing and refiling charges against a defendant.").

the dismissal was not to avoid the application of the speedy trial rule would not only breathe some life back into the purpose of Rule 48, it would also be the correct statutory interpretation. It would no longer require us to ignore the language of Rule 48(b)(3)(C), which provides that the "The time between the dismissal and the refiling of the same charge" shall be excluded in computing the time for trial. The majority and our precedent hold that "Rule 48 implies that the 120-day period will begin anew when the State dismisses the original charge and re-files," *see* majority opinion at ¶ 12.[9] Under this approach, there is no conceivable application of tolling the time between dismissal and refiling, because the time would start over upon refiling. *See also Rhodes*, 2015 WY 60, ¶ 13, 348 P.3d at 409; *Hall v. State*, 911 P.2d 1364, 1370 (Wyo. 1996). We will not interpret a statute or a rule in a way which renders any portion of it meaningless. *See Adekale v. State*, 2015 WY 30, ¶ 13, 344 P.3d 761, 765 (Wyo. 2015); *Story v. State*, 755 P.2d 228, 231-32 (Wyo. 1988). *See also United States v. Young*, 528 F.3d 1294, 1296 (11th Cir. 2008) ("Indeed, the exclusion of the period of time between the dismissal of an indictment and the filing of a new indictment under § 3161(h)(6), as well as the Speedy Trial Act more generally, would make little sense if the government could reset the speedy-trial clock at will and effectively 'circumvent[ ] the speedy trial guarantee through the simple expedient of obtaining superseding indictments with minor corrections.' " (quoting *United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994))).

[¶54] Some courts adopting exceptions to resetting the speedy trial clock require a showing of bad faith on the part of the State or prejudice to the defendant before the exception applies. *See State v. Rose*, 121 Ariz. 131, 589 P.2d 5, 11 (1978) ("[S]peedy trial time limits begin anew, absent a showing of bad faith on the part of the prosecution or prejudice to the accused."); *Curley v. State*, 299 Md. 449, 474 A.2d 502, 507 (1984) ("[P]rosecution must be acting in 'good faith' or so as to not 'evade' or 'circumvent' the requirements of the statute or rule setting a deadline for trial.").

[¶55] Other courts take a different approach. As the New Mexico Supreme Court explained, the right protected by the rule

> is a criminal defendant's right, not that of the State, the courts, or any other party; it is not a tool to punish the State for dismissing and refiling cases in bad faith, nor should its diminution be a reward for the State's good behavior. Viewed in that light, the cases in which courts have conducted a "good faith-bad faith" analysis regarding the State's reasons for dismissing and refiling a case in order to determine if a new six-month time period should be granted are misguided. Instead, any inquiry into the State's reasons for dismissing and refiling in district court should be done within the context of any speedy trial challenge the defendant may raise after the case is refiled in district court.

*State v. Savedra*, 148 N.M. 301, 236 P.3d 20, 23 (2010).

[¶56] The better-reasoned approach places the burden on the State to establish that it has been prosecuting the matter diligently and that it dismissed and refiled charges for proper reasons and not to evade the speedy trial deadline set forth in the rule. For example, in New Mexico, "the burden is cast upon the state to show that any delay in prosecution resulting from a dismissal of charges was occasioned for proper reasons...." *State v. Aragon*, 99 N.M. 190, 656 P.2d 240, 242 (Ct. App. 1982), *cert. denied*, 99 N.M. 226, 656 P.2d 889 (1983). Similarly, in Kansas, "[d]ismissals and refilings when the statutory period is about to expire are suspect and a showing of necessity must be made." *Goss*, 777 P.2d at 784. *See also Carter v. State*, 280 Ark. 34, 655 S.W.2d 379, 379 (1983) (requiring evidence that State sought to evade speedy trial requirement and finding that the State had good cause for dismissal and refiling); *State v. Washington*, 273 Ark. 82, 617 S.W.2d 3, 5 (1981) (same); *People v. Sanders*, 86 Ill.App.3d 457, 41 Ill.Dec. 453, 407 N.E.2d 951, 960 (1980) ("[T]he real issue, when a charge against a defendant is dismissed and

---

**9.** This paragraph cites *Hall v. State*, 911 P.2d 1364 (Wyo. 1996), which relied upon an earlier version of the rule providing a 120-day speedy trial period.

he is later re-indicted on the same offense, may be whether the circumstances suggest that the State is seeking to evade the consequences of the 120 day rule...." (internal citation omitted)).

[¶57] In the instant case whether the speedy trial calculation begins anew on the refiling of charges should depend on whether the State refiled to avoid running the speedy clock timeline or whether it had a proper purpose. There is a suggestion in the record that the State explained that it filed a new case because Mr. Webb failed to accept a plea agreement and because the new charges were more accurate. I would remand the case so that the trial court could make a determination whether the State met its burden to demonstrate it did not dismiss and refile in order to avoid the speedy trial deadline.