FILED
United States Court of Appeals
Tenth Circuit

March 15, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

—————————————————————

CLINT RAYMOND WEBB,

    Petitioner - Appellant,

v.

WYOMING DEPARTMENT OF
CORRECTIONS MEDIUM
CORRECTIONAL INSTITUTION
WARDEN; WYOMING ATTORNEY
GENERAL,

    Respondents - Appellees.

No. 20-8023
(D.C. No. 1:19-CV-00039-ABJ)
(D. Wyo.)

—————————————————————

**ORDER DENYING CERTIFICATE OF APPEALABILITY\***

—————————————————————

Before **MATHESON**, **BALDOCK**, and **CARSON**, Circuit Judges.

—————————————————————

Pro se prisoner Clint Raymond Webb was convicted in Wyoming state court of

multiple offenses against his estranged wife, including attempted second-degree murder.

He seeks a certificate of appealability ("COA") to challenge the district court's denial of

his 28 U.S.C. § 2254 habeas petition. Exercising jurisdiction under 28 U.S.C. § 1291, we

deny a COA and dismiss this matter.[1]

---

\* This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Mr. Webb is pro se, we construe his filings liberally, but we do not act
as his advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## I. BACKGROUND

### A. *Factual Background*

In June 2014, Mr. Webb's estranged wife, Julie Webb, was driving her SUV in Casper, Wyoming. While stopped at an intersection, she saw Mr. Webb in his pickup truck. He drove by and yelled profanity at her. At another intersection, he crashed his truck into her SUV "with enough force that the airbags deployed and a number of car parts scattered across the road." *Webb v. State*, 401 P.3d 914, 919 (Wyo. 2017). He drove away.

Ms. Webb exited her car and attempted to call 911. Before she was able to reach an operator, "she heard 'car engines revving up'" and saw Mr. Webb's truck turn the corner. *Id.* She ran into a nearby yard as "Mr. Webb drove his vehicle quickly from the roadway, onto a sidewalk, and toward [her]." *Id.* She jumped out of the truck's path "and, with the help of a Good Samaritan, sought refuge in the . . . Samaritan's [home]." *Id.* Mr. Webb drove off, collided with a parked minivan, and fled to Las Vegas, Nevada, where he surrendered to authorities.

### B. *Procedural History*

On July 1, 2014, the State charged Mr. Webb in an information with one count of aggravated assault and battery with a deadly weapon. On July 31, the State dismissed that information and filed a new one, adding counts of aggravated assault and battery and felony property destruction. On August 15, Mr. Webb demanded a speedy trial. On October 23, the State voluntarily dismissed the July 31 information and filed a new one, adding a count of attempted second-degree murder.

2

On October 29, 2014, defense counsel sought and received a competency evaluation for Mr. Webb, which "delayed [his trial for] seventy-five days." *Id.* at 923. Mr. Webb was deemed competent. Mr. Webb filed another demand for a speedy trial and unsuccessfully moved to dismiss for lack of a speedy trial.

Trial began on July 27, 2015. On July 31, the jury returned guilty verdicts on all counts. The trial court sentenced Mr. Webb to concurrent terms of five to seven years for each count of aggravated assault and battery with a deadly weapon, a concurrent term of one to three years for property destruction, and a consecutive term of 30 to 45 years for attempted second-degree murder.

Mr. Webb began several attempts to overturn his convictions. Appealing to the Wyoming Supreme Court, he raised speedy trial, prosecutorial misconduct, ineffective assistance of trial counsel, jury instruction, and double jeopardy issues. The court affirmed.

Mr. Webb then filed a pro se state postconviction petition asserting speedy trial and ineffective assistance of appellate counsel claims. The postconviction court dismissed the petition, reasoning that most of Mr. Webb's claims were procedurally barred and that others were not legally cognizable. Mr. Webb sought review in the Wyoming Supreme Court, which summarily denied review.

Mr. Webb next filed the instant habeas petition in federal district court. He alleged a violation of his speedy trial rights, a conflict of interest between trial and appellate counsel, improper use of a privileged attorney-client communication, and ineffective assistance of trial counsel. The State filed a response and moved to dismiss

3

parts of the petition due to procedural bar and non-cognizable state law issues. Mr. Webb moved to vacate the State's accompanying memorandum because it was two pages over the page limit. The district court denied the motion to vacate[2] and Mr. Webb's request for an evidentiary hearing. It then dismissed the habeas petition with prejudice and denied a COA.

Mr. Webb now seeks a COA from this court on his claims regarding speedy trial (two claims), conflict of interest, and ineffective assistance of appellate counsel.

## C. *COA Requirements and AEDPA*

To appeal the denial of a § 2254 petition, a petitioner must obtain a COA by "showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). When the district court has rejected a habeas claim on procedural grounds, the petitioner must show both (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and (2)

---

[2] Mr. Webb argues the district court violated due process by accepting the State's memorandum. We reject this argument. The district court explained that the memorandum addressed numerous and complex issues. Mr. Webb's argument here does not affect whether "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Nor does he provide any authority that a district court's application of its local rules to permit the filing of an overlength document violates due process. *See Bunn v. Perdue*, 966 F.3d 1094, 1100 (10th Cir. 2020) (providing that "a district court's application of its local rules [is reviewed] for abuse of discretion" (quotations omitted)); *Lassiter v. Dep't of Soc. Servs. of Durham Cnty.*, 452 U.S. 18, 24 (1981) (explaining that due process "expresses the requirement of fundamental fairness" (quotations omitted)).

"that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Our consideration of a habeas petitioner's request for a COA must account for the Antiterrorism and Effective Death Penalty Act's ("AEDPA") "deferential treatment of state court decisions." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Under AEDPA, when a state court has adjudicated the merits of a claim, a federal court may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). We therefore "look to the District Court's application of AEDPA to [Mr. Webb's] constitutional claims and ask whether that resolution was debatable amongst jurists of reason." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

In addition to these demanding AEDPA standards, federal habeas petitioners face procedural hurdles. "Federal habeas review is generally barred where the prisoner defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule . . . ." *Smith v. Duckworth*, 824 F.3d 1233, 1242 (10th Cir. 2016) (quotations omitted). And when a habeas petition contains unexhausted claims,[3] a federal

---

[3] To fairly present a claim, and therefore to exhaust it, state prisoners "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "The exhaustion requirement is satisfied if the

5

court may apply an anticipatory procedural bar to those claims if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quotations omitted). A prisoner may overcome procedural bar in federal court "(1) if the prisoner has alleged sufficient cause for failing to raise the claim and resulting prejudice or (2) if denying review would result in a fundamental miscarriage of justice because the petitioner has made a credible showing of actual innocence." *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014) (quotations omitted).

## II. **DISCUSSION**

In his brief to this court, Mr. Webb seeks a COA on his claims regarding speedy trial, conflict of interest, and ineffective assistance of appellate counsel.

### A. *Speedy Trial*

#### 1. **Additional Procedural Background on Speedy Trial**

##### a. *State court proceedings*

On direct appeal to the Wyoming Supreme Court, Mr. Webb argued he suffered a speedy trial violation under (1) Wyoming Rule of Criminal Procedure 48[4] and (2) the Sixth Amendment.

---

issues have been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Brown v. Shanks*, 185 F.3d 1122, 1124 (10th Cir. 1999) (quotations omitted).

[4] Wyoming Rule of Criminal Procedure 48, entitled, "Dismissal; Speedy Trial," provided at the times relevant to Mr. Webb's case:

i. Rule 48

Mr. Webb argued that, under Rule 48, "so long as a defendant has filed a demand for a speedy trial, the State is barred from refiling charges after the original charges are dismissed *for any reason*." *Webb*, 401 P.3d at 920 (emphasis added). The Wyoming Supreme Court disagreed, stating that "Rule 48(b)(7) makes it clear that Mr. Webb's speedy trial demand could affect the re-filing of charges only if the previous charges were dismissed *due to a lack of speedy trial*." *Id.* (emphasis added). And that did not happen, the court said, because the State dismissed the July 31 information just 92 days after its filing. *Id.*[5]

---

(a) . . . The attorney for the state may, by leave of court, file a *dismissal* of an indictment, information or citation, and the prosecution shall thereupon terminate. . . .
(b) Speedy trial.—
. . . .
(2) A criminal charge shall be brought to trial within 180 days following arraignment unless continued as provided in this rule.
. . . .
(5) Any criminal case not tried or continued as provided in this rule shall be dismissed 180 days after arraignment.
. . . .
(7) A *dismissal for lack of a speedy trial* under this rule shall not bar the state from again prosecuting the defendant for the same offense unless the defendant made a written demand for a speedy trial or can demonstrate prejudice from the delay.

Wyo. R. Crim. P. 48 (emphasis added).

[5] Two justices dissented, stating that while the majority's view was "technically correct," "acquiescence in the State's repeated circumvention of the speedy trial rule by dismissing and refiling to start the clock anew has the effect of eviscerating" the rule. *Id.* at 929-30 (footnote omitted) (JJ. Fox and Burke, concurring in part and dissenting in part).

7

In his state postconviction petition, Mr. Webb argued the Wyoming Supreme Court "appl[ied] two conflicting interpretations to W.R.Cr.P. 48(b)(7)" and "reward[ed] the prosecution for a[n] unnecessary delay [ ]through dismissing and re-filing" the charges. ROA, Vol. I at 529, 536. The postconviction court said his claim was procedurally barred by Wyo. Stat. Ann. § 7-14-103(a)(iii) because the claim was decided earlier on the merits:[6] "Although Webb phrases the claims as something new, the substance is still his assertion that his speedy trial rights were violated. The [Wyoming] Supreme Court has already determined those rights were not violated." ROA, Vol. I at 1126 (citation omitted).[7] Mr. Webb advanced his postconviction claim in the Wyoming Supreme Court, which denied relief without comment.

ii. Sixth Amendment

Addressing the Sixth Amendment claim on direct appeal, the Wyoming Supreme Court analyzed the factors in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) (length of the

---

[6] Wyoming Statute § 7-14-103 governs the doctrine of procedural bar in Wyoming courts regarding petitions for postconviction relief:
    (a) A claim under this act is procedurally barred and no court has jurisdiction to decide the claim if the claim:
        (i) Could have been raised but was not raised in a direct appeal from the proceeding which resulted in the petitioner's conviction;
        (ii) Was not raised in the original or an amendment to the original petition under this act; or
        (iii) Was decided on its merits or on procedural grounds in any previous proceeding which has become final.

[7] Further, the postconviction court said, "Mr. Webb wrongly treats this petition as an appeal, arguing that the Wyoming Supreme Court erred in applying the law to his case[,] and arguing the substance of his speedy trial claims." *Id.*

8

delay, reason for the delay, the defendant's assertion of his right, and resulting prejudice), and held that the 396-day period from the first information's filing to Mr. Webb's conviction did not result in a speedy trial violation. *Webb*, 401 P.3d at 924-25.

The court found the first *Barker* factor, length of the delay, did not favor Mr. Webb because he "was convicted of multiple serious felony offenses, and the trial concluded only thirty-one days after the one-year anniversary of the State filing the first Information." *Id.* at 922.

As for the second factor, reason for the delay, the court found it was neutral. It said the 75-day delay caused by the competency evaluation did not count against either side. And while the State caused delay by twice dismissing and refiling the charges, there were no facts to "support a finding that the State dismissed the first two Informations in an attempt to thwart Mr. Webb's defense." *Id.* at 923. Finally, the court observed that Mr. Webb had delayed the proceedings by fleeing to Nevada and later selecting a trial date three weeks after the first available start date.

Turning to the third *Barker* factor, the defendant's assertion of his speedy trial right, the court determined it only "slightly" weighed in Mr. Webb's favor because, shortly before trial, he requested a second competency evaluation, new counsel, and a continuance. *Id.*

On the last *Barker* factor, prejudice, the court said it did not weigh in Mr. Webb's favor because the "defense was not hindered by the" 396-day period from the filing of charges to conviction. *Id.* at 924. The court rejected Mr. Webb's assertion that "the delay prevented his attorneys from inspecting Ms. Webb's [SUV]," as the police never

took it into evidence and simply released it to her. *Id.* Nor did the court discern any prejudice from the delay's impact on witness recollections given Mr. Webb's opportunity to cross-examine witnesses about inconsistent statements and testimony. Finally, the court found no "extraordinary or unusual pretrial anxiety" caused by the delay that would have been prejudicial. *Id.*[8]

Thus, "balanc[ing] all of the *Barker* factors, [the Wyoming Supreme Court] conclude[d] that Mr. Webb's right to a speedy trial was not violated." *Id.*

b. *Federal district court proceedings*

The district court said that insofar as Mr. Webb's claim "allege[d] constitutional violations arising from the Wyoming Supreme Court's analysis of the Wyoming Rules of Criminal Procedure," the claim presented a non-reviewable state law issue. ROA, Vol. II at 143. As to the Sixth Amendment speedy trial issue, the district court "deemed [it] exhausted but procedurally defaulted" because Mr. Webb's postconviction petition did not contain "one word about the Sixth Amendment." *Id.*

---

[8] "The fourth factor, prejudice to the defendant, should be assessed . . . in the light of the interests of defendants which the speedy trial right was designed to protect, i.e., (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Lott v. Trammell*, 705 F.3d 1167, 1174 (10th Cir. 2013) (quotations omitted). Mr. Webb does not address the Wyoming Supreme Court's analysis of prejudice in his COA application. The issue is therefore waived. *See United States v. Springfield*, 337 F.3d 1175, 1178 (10th Cir. 2003) (concluding that the applicant waived his claim on appeal "because he failed to address that claim in either his application for a COA or his brief on appeal"). Moreover, even if he had addressed the issue, it would, in part, be anticipatorily barred because his appellate counsel raised on direct appeal only the anxiety and defense-impairment elements of prejudice. *See Lott*, 705 F.3d at 1179 (applying anticipatory bar to two of the petitioner's *Barker* prejudice arguments).

2. **Analysis**

To the extent our analysis of these claims varies from the district court's, we may deny a COA on a ground that is supported by the record even if the district court did not rely on it. *See Davis v. Roberts*, 425 F.3d 830, 834 (10th Cir. 2005).

a. *Wyoming Rule of Criminal Procedure 48 claim*

In his brief to this court, Mr. Webb claims his due process rights were violated by the "state courts unfairly applying two conflicting meanings" to the word "dismissal" in Wyoming's speedy trial rule, Wyo. R. Crim. P. 48. Pet. Br. at 21. He contends that "[b]y applying two competing meanings to 'dismissal[,]' the state is able to continually dismiss charges within 180 days and refile the charges to start the speedy trial time clock anew for years and years without ever bringing a defendant to trial." *Id.* at 24.

Mr. Webb's arguments in the Wyoming Supreme Court and the state postconviction court complained about the interpretation and application of Rule 48. He did not explicitly assert a federal constitutional claim. Federal habeas relief is not available to correct errors of state law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

If Mr. Webb implicitly alleged a due process violation in the state courts and attempts to advance that argument in his federal habeas proceedings, "a habeas applicant cannot transform a state law claim into a federal one merely by attaching a due process label." *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1043 (10th Cir. 2017). He has done

11

little more than that.[9]  Indeed, his due process theory in this court rests on the same argument his appellate counsel made in state court—that Rule 48(b)(7) prohibits the re-filing of charges if the defendant has demanded a speedy trial and there is *any* dismissal under the rule.  The Wyoming Supreme Court's resolution of this issue presents a non-reviewable determination of state law.

    b. *Sixth Amendment claim*

The federal district court did not address the Wyoming Supreme Court's application of *Barker*.  Instead, it said Mr. Webb's *Barker* claim was unexhausted and procedurally defaulted in state court.  But the claim was exhausted, as Mr. Webb had raised it on direct appeal, so we address it under AEDPA review.  Mr. Webb claims the Wyoming Supreme Court's decision rejecting his Sixth Amendment speedy trial claim was contrary to, or an unreasonable application of, *Barker v. Wingo*.  Reasonable jurists would not debate the district court's denial of this claim, so we deny a COA.

In his request for a COA, Mr. Webb contests the weight assigned by the Wyoming Supreme Court to the *Barker* factors.  He contends the factors weigh in his favor because he merely committed "an ordinary street crime," the court's "overcrowded docket" was attributable to the State, the State was more to blame for the delay, and he had vigorously asserted his speedy trial right.  Pet. Br. at 47-48.  But Mr. Barker has not shown that attempted second-degree murder is an ordinary street crime or that an overcrowded

---

[9] The same analysis applies to Mr. Webb's argument that the Wyoming Supreme Court's speedy trial decision on direct appeal violated "his equal protection right" because it "treated [him] differently than those similarly situated."  Pet. Br. at 46.

docket delayed his trial.  And he has not addressed the delays from his fleeing to Nevada (23 days), rejecting an earlier trial date (21 days), and seeking a competency evaluation (75 days).  It was not unreasonable for the Wyoming Supreme Court to deduct these time periods from the 396 days it took to try and convict Mr. Webb.  Finally, Mr. Webb has not shown the court unreasonably discounted his assertions of the speedy trial right in light of his requests for a second competency evaluation, new counsel, and a trial continuance.

Mr. Webb's "arguments . . . do nothing to establish that the [Wyoming Supreme Court's] determination was an unreasonable application of clearly established federal law." *Lott v. Trammell*, 705 F.3d 1167, 1177 (10th Cir. 2013); *see also Jackson v. Ray*, 390 F.3d 1254, 1267 (10th Cir. 2004) ("In order to grant habeas relief [on a speedy trial claim], . . . we must find pursuant to clearly established Supreme Court law that there is no possible balancing of these factors that is consistent with the [state appellate court's] decision." *Jackson v. Ray*, 390 F.3d 1254, 1267 (10th Cir. 2004).[10]

*      *      *      *

Mr. Webb has not shown that reasonable jurists could debate the district court's denial of his speedy trial claims.

---

[10] *See also Davis v. Kelly*, 316 F.3d 125, 127 (2d Cir. 2003) ("Balancing the *Barker* factors necessarily requires a court to make discretionary judgments."); *Rashad v. Walsh*, 300 F.3d 27, 45 (1st Cir. 2002) (suggesting that AEDPA "deference is heightened in a *Barker*-type case, because constructing a balance among the four factors is more judicial art than science" (quotations omitted)).

13

B. *Conflict of Interest*

In the state postconviction proceedings, Mr. Webb claimed his appointed appellate counsel was ineffective due to a conflict of interest with appointed trial counsel. He argued that because both sets of attorneys were from the Wyoming Public Defender's Office, appellate counsel "chose to protect the interests of her fellow attorneys from her office by omitting issues that have merit on the claim of ineffective assistance of [trial] counsel." ROA, Vol. I at 1150. The postconviction court rejected the claim on separate procedural grounds, reasoning that (1) "appellate counsel raised ineffective assistance of trial counsel on direct appeal, ineffective assistance of counsel is a single claim or issue, and claims already addressed on the merits are procedurally barred";[11] and (2) Wyoming's postconviction statute "provides relief only for errors in the proceedings which resulted in [the defendant's] conviction or sentence." *Id.* at 1125-26 (quotations omitted).

---

[11] On direct appeal, appellate counsel raised one ineffective assistance claim, which targeted trial counsel's failure to "request a jury instruction on accident." *Webb*, 401 P.3d at 926. The Wyoming Supreme Court held that Mr. Webb was not prejudiced because "Mr. Webb was not precluded from arguing the events at issue were the product of an accident" based on the other instructions on intent. *Id.* at 927.

Wyoming sets an expansive bar in postconviction proceedings for ineffective assistance of appellate counsel claims if there was a claim of ineffective assistance of trial counsel on direct appeal. *See Schreibvogel v. State*, 269 P.3d 1098, 1103 (Wyo. 2012) ("Where the appellant has raised the claim of ineffective assistance of trial counsel in his direct appeal," he may not "raise the claim again, on different factual grounds, in a petition for post-conviction relief by arguing that appellate counsel was ineffective for not raising those different factual grounds[.]").

In his request for a COA, Mr. Webb complains he "has been procedurally barred from having his 'fundamental' claim of ineffective assistance of appellate counsel heard in any court." Pet. Br. at 35. But, even if this claim of conflict of interest is procedurally barred, we exercise our discretion to address it on the merits. *See Smith*, 824 F.3d at 1242 (observing that where a "claim may be disposed of in a straightforward fashion on substantive grounds, this court retains discretion to bypass the procedural bar and reject the claim on the merits" (quotations omitted)); *cf. Cone v. Bell*, 556 U.S. 449, 466 (2009) ("When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review.").

Our case law recognizes no inherent conflict when the same public defender's office employs appellate and trial counsel. *See Smallwood v. Gibson*, 191 F.3d 1257, 1270 (10th Cir. 1999) (rejecting conflict of interest argument where appellate counsel from same public defender's office "raised over twenty issues on direct appeal, including an ineffective assistance of counsel claim"). Mr. Webb speculates that appellate counsel chose to protect trial counsel by omitting the ineffective assistance claims he requested. But this does not show "that a relationship to trial counsel hindered his appellate counsel." *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 902 (10th Cir. 2019) (rejecting habeas petitioner's "infer[ence] [of] potential bases for conflicts" and "invit[ation] . . . to imagine the dilemma appellate counsel might be placed in" (brackets and quotations omitted)), *cert. denied*, 140 S. Ct. 844 (2020).[12]

---

[12] *See also Keats v. State*, 115 P.3d 1110, 1113, 1117 (Wyo. 2005) (concluding that petitioner's ineffective trial counsel claim was not subject to the § 7–14–103(a)(i)

Reasonable jurists could not debate the district court's denial of this claim.  A COA is thus not warranted.

## C. *Ineffective Assistance of Appellate Counsel*

### 1. **Procedural Background**

In his state postconviction petition, Mr. Webb claimed that appellate counsel should have argued (1) trial counsel's ineffectiveness in interviewing witnesses, presenting evidence, impeaching witnesses, investigating tire marks, and not compelling the prosecution to produce Ms. Webb's SUV; (2) *Brady* violations; and (3) prosecutorial misconduct.

The postconviction court found the first ground procedurally defaulted by Wyo. Stat. Ann. § 7-14-103(a)(iii) because Mr. Webb had already claimed on direct appeal that trial counsel was ineffective.  *See supra* note 11.

The second ground concerned alleged *Brady* violations arising from the State's releasing the SUV to Ms. Webb and not disclosing evidence of witness perjury.[13]  The

---

procedural bar where petitioner's "direct appeal was handled by trial counsel's law office, and trial counsel's employee," felt "it would have been [in]appropriate to" claim her "boss" was ineffective (quotations omitted)).

[13] Regarding witness perjury, Mr. Webb "complain[ed] about the difference between witnesses' statements at trial compared to the police reports . . . disclosed in discovery."  ROA, Vol. I at 1128.  For instance, he noted that witness DeGraeve testified at trial she was "standing with Ms. Webb near the back of her Honda Odyssey when Mr. Webb cut across the corner of her yard," despite earlier stating in a video disclosed by the prosecution that "she [Ms. DeGraeve] was in front of her Honda Odyssey."  *Id.* at 671-72.  Similarly, Mr. Webb complained that witness Holley testified at trial he was standing outside on his father's driveway and could see there was only one person in Mr. Webb's truck when it "cut across the corner yard," despite earlier stating in a video

16

postconviction court resolved the claim on the merits, finding no ineffective appellate

assistance because there was no evidence the State prevented Mr. Webb from inspecting

Ms. Webb's SUV or withheld evidence of witnesses' prior inconsistent statements.

Mr. Webb based his third ground, prosecutorial misconduct, on his allegation that

the State obtained a letter he wrote to defense counsel while in jail. The postconviction

court found no ineffective assistance because Mr. Webb (a) only speculated that the State

obtained the letter and (b) waived the attorney-client privilege by sending the letter to his

mother for copying and forwarding.

The Wyoming Supreme Court summarily denied review of the postconviction

court's decision.

In his federal habeas petition, Mr. Webb asserted numerous claims of ineffective

assistance of trial counsel, some of which appear to correspond to the claims he raised in

the postconviction proceedings and some of which do not. Regarding his exhausted

claims, we proceed to the merits.[14]

---

disclosed by the prosecution that he witnessed the incident from inside his father's house
and could not see if anyone else was in the truck. *Id.* at 674.

[14] Regarding any unexhausted claims, we apply anticipatory procedural bar
because Mr. Webb would be barred from returning to the Wyoming postconviction court
to exhaust them. *See* Wyo. Stat. Ann. § 7-14-103(a)(ii) ("A claim under this act is
procedurally barred and no court has jurisdiction to decide the claim if the claim . . .
[w]as not raised in the original or an amendment to the original petition . . . ."); *see also*
*Bland v. Sirmons*, 459 F.3d 999, 1012 (10th Cir. 2006) (stating that "[g]enerally, a federal
court should dismiss unexhausted claims without prejudice so that the petitioner can
pursue available state-court remedies," but "if the court to which Petitioner must present
his claims in order to meet the exhaustion requirement would now find those claims
procedurally barred, there is a procedural default for the purposes of federal habeas
review" (quotations omitted)).

## 2. **Legal Background**

The Supreme Court established the ineffective assistance of counsel standard in

*Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a defendant is entitled

to relief if (1) counsel's performance was deficient, and (2) the defendant was thereby

prejudiced.  *Id.* at 687-88.  A defendant establishes the first *Strickland* requirement by

showing counsel's performance "fell below an objective standard of reasonableness."  *Id.*

To meet this requirement, the defendant must overcome a "strong presumption that

counsel's conduct [fell] within the wide range of reasonable professional assistance . . .

[and] might be considered sound trial strategy."  *Id.* at 689 (quotations omitted).  "A

---

Anticipatory procedural bar can be overcome only by establishing cause and prejudice or a fundamental miscarriage of justice.  *Frost*, 749 F.3d at 1231.  Mr. Webb argues that he has cause for not exhausting ineffective-assistance claims because appellate counsel "acted to protect trial counsel[ ] that were in their office."  Pet. Br. at 37.  We have already rejected this argument.

He also alleges actual innocence.  He must identify new evidence "sufficient to show that it is more likely than not that no reasonable juror would have convicted [him] in the light of the new evidence."  *Frost*, 749 F.3d at 1232.  As new evidence, he cites (1) the "analyses" of "four automotive body and collision experts" who purportedly opined that his vehicle was damaged by a side impact; and (2) tire marks allegedly showing he "decelerated in order to avoid hitting Ms. Webb."  Pet. Br. at 41-42.  Mr. Webb discussed this evidence in his postconviction petition as showing that "Ms. Webb was the one who hit Mr. Webb's [truck]," ROA, Vol. I at 429, and he "let off the gas pedal," leaving tire marks on a driveway, "when she ran out [on foot] from in front of [a parked car] and across his path of travel," *id.* at 430.  Even if this is new evidence, it hardly proves that he "had no intention to cause any type of harm."  *Id.* at 428.  The Wyoming Supreme Court's recitation of the facts, which Mr. Webb has not demonstrated is unreasonable, indicates that he purposefully collided with Ms. Webb's SUV and then tried to run her down as she was on foot.  He has not shown that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quotations omitted) ("caution[ing] . . . that tenable actual-innocence gateway pleas are rare").

18

claim of appellate ineffectiveness can be based on counsel's failure to raise a particular issue on appeal, although it is difficult to show deficient performance under those circumstances because counsel need not (and should not) raise every nonfrivolous claim . . . ." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (quotations omitted). A defendant establishes the second requirement of prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

3. **Analysis**

    a. *Trial counsel's performance in interviewing witnesses, presenting evidence, impeaching witnesses, investigating tire marks, and not compelling the production of Ms. Webb's SUV*

In his COA application, Mr. Webb argues that "[a]ppellate counsel omitted the many issues of ineffective assistance of [trial] counsel that [he wanted] asserted [on direct appeal]." Pet. Br. at 37. He complains that trial counsel failed to proffer evidence to "corroborate [his] testimony that Ms. Webb drove into [his truck]," *id.* at 38; failed to investigate the tire marks from his truck to show he "took actions to avoid hitting Ms. Webb," *id.*; and failed to investigate a rock on the roadway to show he "accidentally sideswipe[d] the [minivan]," *id.* at 39. According to Mr. Webb, had trial counsel offered this evidence, the result of his trial would likely have been different. As previously noted, these issues were not raised on direct appeal, and the state postconviction court held they were procedurally defaulted. We nonetheless, as with the conflict-of-interest claim, review this ineffective assistance claim on the merits de novo.

19

Mr. Webb does not address the State's evidence against him. At most, he asserts that Ms. Webb and three other prosecution witnesses "gave perjured testimonies regarding the location of Ms. Webb." *Id.* at 43. *Strickland* requires more. Even assuming trial counsel's performance was deficient, "the defendant [must] affirmatively prove prejudice" by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693, 694. The prejudice analysis necessarily requires "consider[ation] [of] the totality of the evidence before the judge or jury." *Id.* at 695.

Because Mr. Webb does not address the totality of the evidence against him, he has not shown prejudice from trial counsel's representation. And by extension, he has not shown that appellate counsel performed deficiently by omitting Mr. Webb's ineffective trial counsel claims. *See Cargle*, 317 F.3d at 1202 (explaining that when analyzing appellate counsel's performance, we "look to the merits of the omitted issue," and "if the issue is meritless, its omission will not constitute deficient performance" (quotations omitted)).[15]

---

[15] Mr. Webb argues the district court violated his constitutional rights by denying him an evidentiary hearing to present the evidence omitted by trial counsel. He maintains he "has presented critical physical evidence that was not presented at trial," Pet. Br. at 49, and that such evidence is consistent with the post trial opinions of "four different automotive body and collision experts" who "explained that the damage to [his] vehicle occurred from a side impact and therefore could not have happened from [him] hitting or 'ramming' Ms. Webb's [SUV]," *id.* at 41.

The district court denied Mr. Webb's evidentiary hearing request as premature because it had neither completed reviewing the nearly 1,600 pages of documents the parties had submitted nor ruled on Respondents' motion to dismiss. The court did not expressly revisit the issue of an evidentiary hearing. Whether to conduct an evidentiary hearing in habeas proceedings is within the discretion of the district court. *See Fairchild*

20

b. *Brady*

Because the state postconviction court addressed this part of the ineffective assistance claim on the merits, finding no ineffective assistance of appellate counsel, Mr. Webb's claim is subject to AEDPA review. A *Brady* violation requires proof that "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007) (quotations omitted). The postconviction court's finding of no appellate ineffectiveness in omitting a *Brady* claim was reasonable because the State did not prevent Mr. Webb from inspecting Ms. Webb's SUV.

*Brady* also protects a defendant from the improper suppression of impeachment evidence. *United States v. Torres*, 569 F.3d 1277, 1282 (10th Cir. 2009). The postconviction court's determination of no ineffectiveness of appellate counsel in omitting this type of *Brady* claim was reasonable because there was no indication the State failed to disclose impeachment evidence.

c. *Prosecutorial misconduct*

The postconviction court also reviewed this claim on the merits, again limiting federal court review of that court's decision to reasonableness under AEDPA. The state court reasonably concluded that appellate counsel was not ineffective for omitting a misconduct claim premised on a violation of the attorney-client privilege given that

---

*v. Workman*, 579 F.3d 1134, 1147 (10th Cir. 2009). And where, as here, a petitioner's habeas claims are capable of being resolved on the existing record, there is no entitlement to an evidentiary hearing. *Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003).

Mr. Webb had waived the privilege. *See United States v. Ary*, 518 F.3d 775, 782 (10th Cir. 2008) ("Because confidentiality is critical to the privilege, it will be lost if the client discloses the substance of an otherwise privileged communication to a third party." (quotations omitted)).

*   *   *   *

Reasonable jurists could not debate the district court's denial of the ineffective assistance of appellate counsel claims.

## III.  CONCLUSION

We deny a COA and dismiss this matter.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge